BURGESS, Appellant, *v.* LASBY et al., Respondents.

(No. 7,041.)

STATE ex Rel. BURGESS, Relator, *v.* DISTRICT COURT et al., Respondents.

(No. 7,119.)

(Submitted April 21, 1933. Decided June 28, 1933.)

[24 Pac. (2d) 147.]

*Mr. E. H. Goodman, Mr. Fred W. Schmitz* and *Messrs. Toomey & McFarland,* for Appellant and Relator, submitted a brief; *Mr. Schmitz* and *Mr. E. G. Toomey* argued the cause orally.

*Mr. C. A. Spaulding, Mr. J. R. Wine, Mr. Frank T. Hooks* and *Mr. W. D. Rankin,* for Respondents, submitted a brief; *Mr. Spaulding* argued the cause orally.

HONORABLE CHARLES B. ELWELL, District Judge sitting in place of MR. JUSTICE MATTHEWS, disqualified, delivered the opinion of the court.

The two above-entitled cases are companion cases arising out of substantially the same facts, and were argued to the court at the same time.

The original action, *Charles N. Burgess* v. *W. D. Lasby and Marie Lasby,* was commenced in Broadwater county on January 18, 1924, for the foreclosure of a real estate mortgage given by Marie Lasby and W. D. Lasby, husband and wife, to Charles N. Burgess, to secure the payment of $20,000. There was default in the payment of taxes, because of which failure it is alleged that Burgess elected to declare the entire debt due and to foreclose the mortgage.

The complaint alleges notice to the Lasbys and demand that they pay the taxes, their failure to do so, the payment of such taxes by Burgess, and further alleges that the defendants are not occupying the premises; that the premises are now deserted and abandoned, and, while in that condition, cannot be worked, and that there will be no rents, issues or profits therefrom, which rents, issues and profits, under the conditions of the mortgage, immediately accrue to the benefit of the mortgagee upon default, and that, owing to the great depreciation in real estate values and the present condition of the property, the property is probably insufficient to discharge the mortgage debt. It is further alleged that plaintiff is entitled to the immediate benefit of the rents, issues and profits, and is entitled to have a receiver appointed to take possession of the premises immediately and hold them until the sale and account to the plaintiff for the rents, issues and profits. The prayer of the complaint asks that the decree provide that the plaintiff is entitled to the rents, issues and profits from and after December 1, 1923, to the date of sale, and further asks that a receiver be appointed to take possession of the premises and hold them until the sale and account to the plaintiff for the rents, issues and profits.

The complaint is verified positively (except as to matters therein stated on information and belief, of which there are none in the complaint), and a copy of the mortgage is attached to and by reference made a part of the complaint, which mortgage contains a provision that on default all rents and profits of the property shall accrue to the benefit of the mortgagee.

The summons was served on the defendants in Broadwater county by delivering a copy thereof to Marie Lasby and a copy of the summons and complaint to W. D. Lasby. On February 6, 1924, both defendants appeared by demurrer, being represented by Frank T. Hooks, of Townsend, Montana, and William Scallon and J. R. Wine, of Helena, Montana. On February 14, 1924, an order was made by Hon. William L. Ford appointing Chris Bliler as receiver, fixing his bond at $1,500, directing that the rents, issues and profits be de-

posited in court from time to time, which order recites that Frank T. Hooks, Esq., appeared in court for the defendants, and that from the complaint and the showing made in open court it appears that the premises are abandoned by the defendants, vacant and in danger of waste and depreciation, and that they will probably not bring sufficient on sale to satisfy the lien of the plaintiff, and that it is necessary that a receiver be appointed. This order was filed on February 14, 1924, but was not recorded until June 5, 1931.

On September 29, 1930, a motion was made by the defendants to vacate the order appointing a receiver, which was heard by Judge Pomeroy, and on November 24, 1930, he denied the motion. At the time of hearing the motion before Judge Pomeroy the original order appointing the receiver was not before the court, it not being in the files nor recorded, and all that the records showed was the docket entry of February 14, 1924: "Order of Appointment of Receiver," and two minute entries, one of February 13, 1924: "Plaintiff's motion for appointment of receiver set for hearing on February 14, 1924, at ten o'clock A. M.," and the other on February 14, 1924: "Plaintiff's motion for appointment of a receiver submitted to the court and granted."

An appeal from Judge Pomeroy's order denying the motion to vacate the order appointing the receiver was taken to this court, and, after the transcript had been filed, the original order signed by Judge Ford, dated February 14, 1924, was returned to the clerk of the district court of Broadwater county on May 5, 1931, from the office of William Scallon, one of the attorneys of record for the defendants. This original order was sent to this court with a motion that it be considered in determining the appeal, which was done over objection of the defendants, and the order of Judge Pomeroy refusing to vacate and set aside the order appointing a receiver was affirmed, and later a motion for rehearing was denied. (*Burgess* v. *Lasby*, 91 Mont. 482, 9 Pac. (2d) 164.)

In the meantime, and on February 18, 1924, Chris Bliler filed his bond as receiver, and on February 23, 1924, filed his

oath as receiver. He subsequently filed a number of reports of his receivership, most of which, if not all, were served on Frank T. Hooks, attorney for the Lasbys; dates were set for hearing, and all but one were approved. On May 12, 1930, William D. Lasby and Marie Lasby executed and filed with the clerk of court of Broadwater county an assignment of their interest in the funds in the hands of the receiver to Frank T. Hooks and J. R. Wine, their attorneys, to the extent of $1,500, and the balance to Lasby Drug Company, Incorporated, and on October 17, 1930, and just before the hearing before Judge Pomeroy, the Lasbys executed and filed with the clerk of court a further assignment of the funds in the receiver's hands accumulated since the prior assignment. In August, 1930, and before the first hearing, Marie Lasby executed a deed to a strip of mortgaged land to the state of Montana for a highway, and Burgess and wife executed a like deed. The consideration for the deed was turned over to the receiver for accounting in the receivership.

There is no dispute but that the defendants and at least one of their attorneys, Frank T. Hooks, knew of the purported appointment of the receiver and of his taking charge of the properties and the management thereof, and made no objection. They explained their failure to make objection by the fact that up to the time of the decision of the supreme court in the case of *Lasby* v. *Burgess*, 88 Mont. 49, 289 Pac. 1028, rendered March 25, 1930, they had contended that the land did not belong to the Lasbys and were attempting a rescission of the contract by which Burgess sold them the land on which the mortgage was given; and, further, that they took the view that the order appointing the receiver was absolutely void. After the decision of this court in 91 Mont. 482, 9 Pac. (2d) 164, sustaining the order of Judge Pomeroy, the Honorable O. F. Goddard was called in, and on June 14, 1932, granted leave to the defendants to file an amended and supplemental petition to vacate and set aside the order appointing a receiver, and on June 15, 1932, motion, notice of motion and supporting affidavits were filed by the defendants. On June

27, 1932, a hearing was held before Judge Goddard, over the objection of the plaintiff, at which considerable testimony was adduced in an attempt to show what actually happened on February 14, 1924, the date of the original order appointing a receiver, and immediately prior thereto. On August 24, 1932, Judge Goddard signed an order vacating and setting aside the order appointing a receiver, ordering $800 to be paid to the receiver as his compensation for services, and directing the clerk of court to pay over to the defendants the balance of said money, which order was filed on August 25, 1932.

What followed the filing of this order and the payment of the money to the defendants and their counsel, and the attempts of the plaintiff to stop the payment thereof and to impound the proceeds, is detailed in the decision of this court in this case in proceedings to impound the receivership funds, dated December 21, 1932 (*Burgess* v. *Lasby,* 93 Mont. 610, 23 Pac. (2d) 1100), which decision gave the defendants ten days in which to file affidavits in opposition to plaintiff's motion, enjoined further disposition of the funds and reserved further consideration of the motion to impound the funds, until this hearing. The counter-affidavits have been filed.

In the meantime, and on December 20, 1932, an injunction was issued out of this court directed to the defendants, and to C. A. Spaulding, J. R. Wine, Frank T. Hooks and Joe Lasby, to hold subject to the order of this court the proceeds of the order for the payment of the receivership funds, namely, $7,597.60. Defendants, as shown by the opinion of this court dated December 21, 1932, stipulated in open court that the injunction issued on December 20, 1932, should remain in full force until the final hearing.

From the decision of Judge Goddard vacating and setting aside the order appointing a receiver an appeal has been taken. A motion to dismiss has been filed and also a motion to strike the transcript from the records, and a further motion to strike certain portions of the transcript, all of which will be considered later.

Thereafter, and on January 23, 1933, there was filed in this court case No. 7119, *The State of Montana ex rel. C. N. Burgess* v. *District Court of the First Judicial District of the State of Montana, in and for the County of Broadwater, etc.,* entitled: "Petition for Writ of Supervisory Control, etc., Suplementary to Appeal and to reach, in the complete exercise of Appellate Jurisdiction, alleged non-appealable provisions of and in Respondents' determination appealed from and complained against herein." This petition details the appeal from the order of Judge Pomeroy refusing to set aside the order appointing a receiver, the decision of this court affirming Judge Pomeroy's order, the action of Judge Goddard in granting leave thereafter to renew the motion, the filing of the motion, the proceedings thereon, and the order of Judge Goddard vacating and setting aside the order appointing a receiver and directing the payment of $800 to the receiver for his services, and that the balance of the money be turned over to the defendants. It details the proceedings thereafter taken in an attempt to stop the payment of the proceeds of the receivership, as set forth in the proceedings before this court to impound the money. The petition then alleges that Judge Goddard's order of August 24, 1932, was manifestly wrong, contrary to law, made in wilful disregard of the law, and constituted a flagrant and tyrannical abuse of discretion, resulting in gross injustice to the petitioner, and sets out in detail why it will result in such gross injustice. It is further alleged that, while defendants in the case of *Burgess* v. *Lasby* asked only for the vacation of the order appointing a receiver, the order itself assumes not only to vacate and set aside that order, but to fix, allow and settle the compensation of the receiver, thereby recognizing the validity of the receivership, and to direct the delivery and transfer of the money accumulated by the receiver, all in one order. It further details that the appealability of the first two parts of such order of Judge Goddard is questioned; that is, first, the provision of the order vacating and setting aside the order appointing a receiver, and, second, the order fixing the compensation of the

receiver, and that an appeal from any final judgment that may be entered in the foreclosure action will be entirely inadequate. On January 23, 1933, an order to show cause was issued out of this court based on this petition, and on April 15, 1933, a return on the order to show cause was filed by the respondents. The petitioner on April 21, 1933, filed a demurrer to the return and also a motion to strike the return. In the meantime this court had entered its order that the appeal, the special proceedings on impoundment and injunction, the original application, and all matters and things therein involved be finally presented, argued and submitted to the court at one and the same time.

The defendants' motion to dismiss the appeal is based upon three grounds: (1) That the order appealed from is a nonappealable order; (2) that the notice of appeal served and filed is insufficient to sustain the appeal, in that it declares and states that the appellant is appealing from an order vacating an order appointing a receiver, from which no appeal can be taken; and (3) that subsequent to the filing of the appeal plaintiff filed a petition for a writ of supervisory control, in which petition it is contended that the order in question is nonappealable.

As to the first contention, Judge Goddard's order not only assumed to vacate the order appointing a receiver, but directed the clerk to pay to the receiver a certain sum of money and to pay over the remainder to the defendants or their counsel. Under section 9731 of the Revised Codes of 1921, an order directing the delivery of property is appealable.

It is contended that that portion of the order vacating and setting aside the order appointing a receiver is nonappealable. It is held by this court in *Taintor* v. *St. John,* 50 Mont. 358, 146 Pac. 939, that an order annulling an order appointing a receiver is nonappealable. This court in the same case also drew some distinction between an order annulling an order appointing a receiver and an order vacating and setting aside an order appointing a receiver, such distinction

having to do mainly with the liability of the party procuring the appointment of the receiver. We do not consider the distinction drawn as of great importance in this particular case. However, in the case of *State ex rel. Heinze* v. *District Court*, 28 Mont. 227, 72 Pac. 613, 616, Chief Justice Brantly said: "The order of January 31 was, in effect, a final judgment, making disposition of the branch of the case touching the receivership, and as such, we think, an appeal will lie therefrom at any time within one year from the date of its entry. 'A final judgment is not necessarily the last one in an action. A judgment that is conclusive of any question in a case is final on that question. The Code provides for an appeal from a final judgment, not from *the* final judgment in an action.' " This was cited with approval in *Kline* v. *Murray*, 79 Mont. 530, 257 Pac. 465. However, in view of what is said hereafter, we do not feel the necessity of deciding the appealability of that portion of the order which vacates and sets aside the order appointing a receiver.

The contention that the notice of appeal served and filed ▓ is insufficient cannot be sustained. The notice of appeal describes the court which made the order, the parties litigant, gives the date of the order and such a description of the order as to apprise the defendants, with no uncertainty, as to what order is meant, and tells them that the appeal is from the whole order. So long as a notice serves the purpose of apprising the defendants of the order it is sought to have reviewed, it is sufficient. It does not serve any higher purpose than a summons (*Stephens* v. *Conley*, 48 Mont. 352, 138 Pac. 189, Ann. Cas. 1915D, 958), and if the notice of appeal does include, or attempt to appeal from, a nonappealable order, that does not affect the appeal as to the part appealable (*MacGinniss* v. *Boston & Montana, C. C. & S. M. Co.*, 29 Mont. 428, 75 Pac. 89; *Bryant* v. *Davis*, 22 Mont. 534, 57 Pac. 143).

The third contention is that, the appellant having subsequently filed a petition for a writ of supervisory control, which is only allowable where there is no remedy by appeal, he has waived his appeal and is now estopped to prosecute it.

544

The situation as presented is that on the appeal the defendants Lasby, through their counsel, have contended that the order is not appealable, and as to two portions of that order, namely, the portion vacating and setting aside the order appointing a receiver and the portion fixing the receiver's compensation, there is considerable question. However, the mingling of the appealable and the nonappealable features of this order is not the fault of the plaintiff and appellant, Burgess. In fact, there is no indication in the proceedings up to the time of the filing of the order, that the order would deal with anything other than the appointment of the receiver. In order, therefore, to be safe, the plaintiff, Burgess, in addition to his appeal, filed his petition for a writ of supervisory control, and an order to show cause thereon was issued. If appeal was not his remedy, then his only remedy was by writ of supervisory control. It has been held that, where it is questionable whether a case should be brought up by appeal or by writ of error, the case may be brought up by both modes, and, when the appellate court comes to examine the case, it will determine whether it is properly brought up by appeal or writ of error and proceed accordingly. This has been held in a number of cases decided in the United States Supreme Court and also in the United States circuit court of appeals; and in the case of *Lockman* v. *Lange,* 132 Fed. 1, 3, 65 C. C. A. 621, the court said: ''The practice of taking an appeal and a writ of error to review the same adjudications is not only permissible, but commendable, in cases in which counsel have *just reason* to doubt which is the proper proceeding to give jurisdiction to the appellate court. In such cases the reviewing court will consider both proceedings, will dismiss that one which is ineffective, and will review the rulings of the court below in accordance with the rules of the method applicable to the nature of the case before it." (See *Hurt* v. *Hollingsworth,* 100 U. S. 100, 25 L. Ed. 569; *Plymouth Consol. Gold Min. Co.* v. *Amador & S. Canal Co.,* 118 U. S. 264, 6 Sup. Ct. 1034, 30 L. Ed. 232.)

We do not wish to approve the practice of taking an appeal and asking for a writ of supervisory control generally where there is no mingling of appealable and nonappealable orders, but we cannot see why the mingling of appealable and non-appealable orders in one order by the court or by the other party should deprive the plaintiff of the right of review by appeal or by supervisory control of any and all such matters, and we can see no objection in this case, and under the above circumstances, to reviewing the case before us as to the appealable order upon the appeal, and as to any of them which may not be appealable upon the writ of supervisory control.

The defendants next filed a motion to strike the bill of ▮ exceptions from the transcript on appeal on the ground that the bill was served before it was filed. The statute provides that the party appealing shall prepare and file with the clerk of court and serve upon the adverse party a bill of exceptions, and the contention is that the order of filing and service is definitely fixed by the statute, and is controlling and important. It is true that the supreme court in the cases of *State ex rel. Hall* v. *District Court*, 34 Mont. 112, 85 Pac. 872, 115 Am. St. Rep. 522, 9 Ann. Cas. 728, and *McCauley* v. *Jones*, 35 Mont. 32, 88 Pac. 572, in construing a somewhat similar statute in respect to appeal from the justice court to the district court, held that the order of filing and service as set out in the statute was important and controlling, and that, unless it was strictly followed, the appeal should be dismissed. This seems to be a strained construction of the statute, and that it is strained is evidenced by the fact that the legislature took an early opportunity to do away with any such construction of that particular statute by adding the words: "The order of serving and filing is immaterial." This particular statute has not been construed in that way, and our court in the case of *State ex rel. Bullard* v. *District Court*, 86 Mont. 358, 284 Pac. 125, 126, in an opinion written by Chief Justice Callaway, states that the rules of practice should be fixed in substance but flexible in application. "Statutes regulating practice * * * are generally hard and fast in their opera-

tion, excluding that pliability which is so essential to equal and speedy justice. To make the situation worse, the courts generally have exhibited a marked tendency to construe statutes relating to procedure as mandatory, rather than directory, with strictness rather than liberality.'' We cannot bring ourselves to believe that the legislature intended that the order of service and filing in this particular instance was material, and we would not feel constrained to say that, if the order named therein were reversed, it would be material. So long as both the filing and the service take place within the time allowed by law, we hold the order thereof to be of no moment.

We are next confronted with a motion to strike certain portions of the transcript. These portions contain the appeal bond and supersedeas or stay bond and certain telegraphic communications and special orders signed by Judge Goddard after his original order had been filed, and some of them after the money had been delivered to the attorneys for the Lasbys. As these matters are also contained in the papers filed in connection with the proceedings to impound the funds and are also contained in the petition for a writ of supervisory control, and all of these matters are being considered at one and the same time, we do not think it necessary to consider this motion to strike.

On the merits of the appeal and the petition for writ of supervisory control many questions have been raised, but first the question has been raised that the appeal from the order cannot be considered because no exception was taken to the findings of fact contained in the order. Findings are not necessary on a hearing on a motion (*McCoy* v. *Brooks,* 9 Ariz. 157, 80 Pac. 365; *Dedrick* v. *Port Jervis L. & P. Co.,* 172 App. Div. 260, 158 N. Y. Supp. 364), and therefore no exceptions to any findings the court may have incorporated in the order were necessary.

It was urged that the questions raised and considered by Judge Goddard on the motion to vacate the order appointing a receiver were *res adjudicata,* and that he had no right to grant leave to defendants to renew their motion upon the same

general grounds, but this need not be considered in view of our conclusion reached upon the merits.

It is urged that the court below correctly found that there was no notice given on the application for the appointment of a receiver, and that the complaint was not sufficient to support such an application. The complaint was verified positively and served all the purposes of an affidavit, and is a sufficient basis for an application for a receiver if it contained the necessary allegations. The defendants contend that the allegation as to the property, being insufficient to discharge the mortgage debt, is a mere conclusion, and there may perhaps be some merit in this contention as to some of the allegations. But the application is not based merely upon the statutory ground that the property is insufficient to discharge the mortgage debt, but is based primarily upon the contract entered into between the defendants and the plaintiff, providing that the plaintiff or mortgagee, upon default, would immediately be entitled to the rents and profits of the mortgaged premises. This court has held that the only means of establishing the right so granted in the mortgage is by the mortgagee availing himself of the right through the appointment of a receiver, but has further held that, when such a provision is present and it appears that the rents and profits will probably be lost unless a receiver is appointed, a receiver should ordinarily be appointed, regardless of the solvency of the defendant, unless the mortgagor shows that the mortgaged property is sufficient to discharge the mortgage debt without resort to the rents and profits. (*Hastings* v. *Wise,* 89 Mont. 325, 297 Pac. 482.)

The complaint alleges positively such an agreement as to rents and profits and the breach of the mortgage provisions and facts affirmatively showing that without a receiver the rents and profits would be lost, and is therefore sufficient to support the application for and appointment of a receiver.

In opposition to the contention that the alleged failure to give notice to the defendants made the order void or voidable,

and that it should therefore be set aside, the plaintiff contends, first, that notice was given; second, that notice was waived; and, third, that the defendants have been guilty of laches, and that they are estopped at this late date to question the giving of notice.

We have found that the court had jurisdiction to make an ▮▮ order appointing a receiver in this case, and that the complaint was sufficient to support the application. Notice of the application was necessary; the defendants having appeared in the action. (Sec. 9302, Rev. Codes 1921.) But this notice could be waived. (*Kimbrough* v. *J. K. Orr Shoe Co.*, 98 Ga. 537, 25 S. E. 576; *Richardson* v. *Beasley*, (Tex. Civ. App.) 50 S. W. (2d) 420.) And on the question of estoppel it has been held that recognition of the receivership and efforts to obtain benefits thereunder estop a party from attacking the validity of the receivership. (*Grand Rapids Electrotype Co.* v. *Powers-Tyson Corp.*, 256 Mich. 311, 239 N. W. 323.)

On the question of waiver, Frank T. Hooks, attorney of record for both defendants, was present in court at the time the application was made to the court to appoint a receiver. His attention was called to the fact that such application was then and there being made. He did not object to the court taking the matter up at that time, or protest that perhaps the statutory notice had not been given, but simply stated that he neither objected nor consented to the appointment. According to his own testimony, he and the other attorneys for defendants had anticipated the application for, and possible appointment of, a receiver, and had discussed the matter and decided to have nothing to do with it because the complaint, in their opinion, was not sufficient to support an order appointing a receiver, and this was undoubtedly what he had in mind when he was in court on the morning the application was presented to Judge Ford. If he objected to the lack of notice, he should have made it known at that time or at least within a reasonable time after the appointment.

But the defendants say they had no knowledge of the order appointing a receiver, notwithstanding the fact that the original order itself did not remain in the office of the clerk of court long enough to be recorded and was voluntarily returned some seven years or more later from the office of the chief attorney for the defendants. We know that Mr. Scallon did not knowingly keep this paper for such a length of time, but we know equally well that it was not placed in Mr. Scallon's office by the plaintiff, and in order for it to have reached Mr. Scallon's office he or some of counsel associated with him must have known of its existence. And, whether they knew of this written order or not, Hooks knew that a receiver had been appointed, was acting, and that he was accumulating moneys under the appointment, and further that he was making reports thereof to the court.

The only conclusion we can reach from this state of facts is that the defendants waived formal notice of the application for appointment of a receiver, and that they had knowledge of his appointment and of his acting as receiver, and they cannot years later question the receivership on a ground which they did not at that time deem sufficient to urge, if in fact it then occurred to them to raise such an objection.

Therefore the order of the district court vacating and setting aside the order appointing a receiver is reversed. The district court will see that the order as to deposits of receivership funds is hereafter carried out, and that funds in excess of the receiver's bond are not permitted to accumulate in his hands.

Pending this decision, an order was made impounding the funds turned over to the defendants after Judge Goddard's order was made. An injunction was issued, as above indicated, and it was stipulated by defendants in open court that such injunction should remain in force until the final hearing.

The funds in controversy, namely, $7,597.60, were known by the defendants and their counsel to be receivership funds, and the receiver was known to be an officer of the court. They also knew, or should have known, that the order of Judge Goddard was subject to review and possible reversal either on

appeal or by writ of supervisory control, and that any funds of a receivership improperly paid over to them must be returned to the court in the event of the reversal of such order. Moreover, in reversing the decision of the district court, it is the duty of this court to enforce, by appropriate directions, the provisions of section 9752, Revised Codes of 1921, which reads in part as follows: "When the judgment or order is reversed or modified, the appellate court may make complete restitution of all property and rights lost by the erroneous judgment or order, so far as such restitution is consistent with protection of a purchaser of property at a sale ordered by the judgment, or had under process issued upon the judgment, on an appeal from which the proceedings were not stayed."

The cases are legion which hold under an identical statute that the court may, in case the order appealed from is reversed, either compel restitution by its own mandate or direct that the lower court do so, or the plaintiff may maintain a separate action for that purpose. (2 Cal. Jur. 1000 and 1062 et seq., and cases there cited; *Haebler* v. *Myers*, 132 N. Y. 363, 30 N. E. 963, 28 Am. St. Rep. 589, 15 L. R. A. 588. And see 2 R. C. L. 291, and the exhaustive note in 96 Am St. Rep. 124.)

The district court is instructed, in accordance with this opinion, to direct the defendants Lasby, and also such other, or others, as the district court may find and hold responsible (liable to respond) for said money, or some part thereof, upon the filing of the remittitur in this case, to return and pay over to the clerk of court of Broadwater county the sum of $7,597.60, and the clerk of court immediately upon receipt of same shall deposit it with the county treasurer of Broadwater county to the credit of the receivership fund in this case to await the final disposition thereof.

In the meantime, and until the final disposition of this matter in accordance with this opinion and the order of the district court issued pursuant thereto, the injunction heretofore issued out of this court in connection with the motion to

impound the funds of the receivership is hereby continued in full force and effect.

Mr. Chief Justice Callaway and Associate Justices Angstman, Stewart and Anderson concur.

Rehearing denied July 25, 1933.

STATE ex Rel. STATE BANK OF TOWNSEND, Relator, *v.* DISTRICT COURT et al., Respondents.

(No. 7,137.)

(Submitted April 21, 1933. Decided June 29, 1933.)

[25 Pac. (2d) 396.]

*Mr. T. B. Weir* and *Mr. Harry P. Bennett,* for Relator, submitted a brief; *Mr. Weir* argued the cause orally.

*Messrs. Gunn, Rasch, Hall & Gunn,* for Respondents, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

*Messrs. Toomey & McFarland, Mr. Fred W. Schmitz* and *Mr. E. H. Goodman,* for C. N. Burgess on petition for right to intervene in cause No. 7119, being the application for writ of supervisory control, *Mr. E. G. Toomey* presenting oral argument in support of petition.

HONORABLE CHARLES B. ELWELL, District Judge, sitting in place of MR. JUSTICE MATTHEWS, disqualified, delivered the opinion of the court.

This matter comes before this court on an application for a writ of supervisory control.

On December 24, 1932, the Union Bank & Trust Company, a corporation, filed a complaint in the district court of the first judicial district against the State Bank of Townsend, a corporation, Frank T. Hooks and W. D. Lasby, upon a cashier's check for $7,597.60, issued by the latter bank to Frank T. Hooks, indorsed over by him to W. D. Lasby, and indorsed, sold and delivered by Lasby to the Union Bank & Trust Company on the same day. The funds evidenced by the check are those involved in the receivership in the case of *Burgess* v. *Lasby,* Case No. 7041, ante, p. 534.

On or about January 9, 1933, the defendant State Bank of Townsend made application to the district court of the first judicial district, in which the above case was pending, for an order requiring Charles N. Burgess, Union Bank & Trust Company, Frank T. Hooks and W. D. Lasby, as conflicting claimants, to interplead, the application being supported by the affidavit of P. H. Murphy, cashier of the State Bank of Townsend. The affidavit of Murphy states that on or about

the twenty-fifth day of August, 1932, the defendant Hooks presented to the defendant State Bank of Townsend, for payment, a check of Charles D. Ballard, county treasurer of Broadwater county, drawn on the defendant bank to the order of the defendant Hooks for $7,597.60, at which time the county treasurer had on deposit with the defendant bank, subject to his check, money in excess of the amount of the check; that the defendant Hooks asked for and accepted in payment of the treasurer's check the cashier's check of the defendant bank in the sum of $7,597.60, and that after the delivery of the cashier's check to the defendant Hooks, Charles N. Burgess on August 25, 1932, made claim upon the defendant bank for the proceeds of the county treasurer's check and demanded the same; that on August 26, 1932, the Union Trust & Bank Company, as holder of the cashier's check, presented the same to the defendant bank for payment, at which time the check bore the indorsement of the defendants Hooks and Lasby, and that by its complaint in said action the plaintiff bank demanded and claimed the funds represented by the cashier's check. The petitioner further states that the claims and demands on the defendant State Bank of Townsend are conflicting and are made in disregard of each other and are made without collusion on the part of the State Bank of Townsend, and that that bank is ready and willing and desirous of turning over said money to whomsoever may be entitled thereto, but cannot with safety to itself turn the same over on account of the conflicting claims, until such claims shall have been litigated and determined as between the several claimants.

To this petition separate demurrers were filed by the Union Bank & Trust Company and the defendants Hooks and Lasby, and on January 25, 1933, the matter was presented to the district court of the first judicial district, Judge Horsky presiding, upon the demurrers to the petition for interpleader. In the progress of the argument on the demurrers to the petition for interpleader, the defendant State Bank of Townsend tendered to the clerk of court for filing the affidavit of C. N. Burgess and requested that the court allow the affidavit

offered as a supplement or amendment to its original affidavit filed in support of its petition for an order of interpleader, to which the plaintiff Union Bank & Trust Company and the defendants Hooks and Lasby objected, and the objection was by the court taken under advisement.

On February 24, 1933, the following order was made by Judge Horsky: "In this action the demurrers of the Union Bank & Trust Company, W. D. Lasby and Frank T. Hooks to the petition of the State Bank of Townsend for an order of substitution or interpleader in the above-entitled cause, having been heretofore submitted and taken under advisement, and the court having fully considered the same, it is ordered that the said demurrers be, and each thereof is, hereby sustained. It is further ordered that the objection interposed to the application of the State Bank of Townsend for leave to file the affidavit of C. N. Burgess as a supplement or amendment of its original affidavit is hereby overruled."

The affidavit of C. N. Burgess, and the accompanying papers, annexed to the affidavit, which were tendered to the court on January 25, 1933, and the objection to the filing of which was overruled by the court in its order of February 24, 1933, sets out in detail all the circumstances surrounding the securing of the check from the county treasurer, including the order of Judge Goddard, in the case of *Burgess* v. *Lasby,* directing that the money be turned over to Lasby, the efforts of Burgess and his attorneys to stop the payment of the money and to secure a stay order; that the money was the balance of a fund accumulated by the receiver in the case of *Burgess* v. *Lasby;* the efforts of Judge Goddard to stay the payment over of the money and to stay the execution of his order so far as it concerned the payment of the money to the defendant; that such matters were called to the attention of Lasby and his attorney; that notwithstanding all this an order was secured from the clerk of court and a check secured from the county treasurer; that shortly after the issuance of the cashier's check by the State Bank of Townsend, and before it was cashed, the facts and circumstances surrounding the procur-

ing of the check were called to the attention of the State Bank of Townsend by Burgess and his attorneys, who laid claim to the funds, and that the State Bank of Townsend authorized and instructed Mr. Toomey, who was attorney for Mr. Burgess, to telephone stop payment orders on the cashier's check to the First National Bank & Trust Company and the Union Bank & Trust Company, at Helena, Montana; that immediately and before the check was cashed, the stop payment order on the cashier's check was communicated to the First National Bank & Trust Company at Helena, through its cashier, L. S. Hazard, and to the Union Bank & Trust Company at Helena, Montana, through A. T. Hibbard, vice-president and cashier of such bank, and that Hibbard informed Toomey that payment would be stopped by the Union Bank & Trust Company on the cashier's check. Further it is detailed that two demands for payment of the cashier's check were made upon the First National Bank & Trust Company at Helena for payment of the cashier's check, both of which were refused with the statement that the item could not be handled except for collection; later that a demand was made at the Union Bank & Trust Company, and that Frank Bogart, vice-president of the latter bank, who had not been advised by Mr. Hibbard of the stop payment order, cashed the same.

The petition for a writ of supervisory control further alleges that the order of February 24, 1933, is arbitrary and unlawful in that the State Bank of Townsend makes no claim to the money, proceeds of the cashier's check, and is ready, able and willing to deposit the same with the clerk of the district court, and that the district court arbitrarily refused to require the claimants to interplead and refused to discharge relator from the several claims upon paying into the district court the money, proceeds of the cashier's check, in violation of the rights of the relator to have the claimants interplead in the action and the relator discharged.

Just prior to the date set for argument in the supreme court, Charles N. Burgess filed in this court a petition which appears to be a combination of a petition to appear

as *amicus curiae* and a petition to intervene in the proceedings in the supreme court.

We cannot see that the petitioner, Charles N. Burgess, has any standing in this court in connection with the petition for writ of supervisory control. He is not a party to the petition for an order of interpleader in the lower court, nor a party to the original action in that court, and if, as a stranger to the case, he desired to become an actor therein, he could do so by a petition in the district court under section 9088 of the Revised Codes of 1921.

In the oral argument some slight attention was paid to the right of this court to grant a writ of supervisory control in a case of this kind. In the case of *In re Weston,* 28 Mont. 207, 72 Pac. 512, this court said: "We think one of the functions of the writ of supervisory control is to enable this court to control the course of litigation in the inferior courts where the courts are proceeding within their jurisdiction, but by a mistake of law, or wilful disregard of it, are doing a gross injustice and there is no appeal or the remedy by appeal is inadequate." And the writ of supervisory control may control where discretion is lodged in the inferior court. (*State ex rel. Anaconda C. M. Co.* v. *District Court,* 25 Mont. 504, 65 Pac. 1020.)

There is no contention that an appeal will lie in this case. Of course, the ruling might be reviewed on an appeal from final judgment, but this remedy would be inadequate if the State Bank of Townsend is in fact entitled to an order of interpleader.

The right to have the several claimants of one fund interpleaded is a substantial one and should not be denied if a proper case therefor is presented, and if a substantial right has been denied and there is no appeal or the remedy by appeal is inadequate, then the writ of supervisory control will issue.

The relator, Union Bank & Trust Company, attempts to draw a distinction between the funds, first as represented by the check of the county treasurer, then as represented by the cashier's check issued by the Townsend bank, and the cashier's

558

check itself, as an evidence of the bank's liability to pay out those funds. We cannot see in this case any need for entering into such a discussion.

We believe that the demurrers as filed to the original ▮ petition in interpleader were good, in that the original petition and the affidavit in support thereof stated only that C. N. Burgess laid claim to the funds in question. There must be something further than this, as the mere assertion of a claim by another, without alleging something of the nature of the claim to show that there is some basis for it, even though the claimant may not ultimately succeed in establishing his right to the funds, is but a conclusion. Furthermore, if the nature of the claim and character thereof are not established, it may be possible that the party requesting the interpleader has incurred an independent liability to the claimant, and is not in the position of a mere stakeholder. (15 R. C. L., Interpleader, par. 12, p. 230, and par. 18, p. 237; 33 C. J., Interpleader, p. 454; *Varrian* v. *Berrien,* 42 N. J. Eq. 1, 10 Atl. 875.)

However, the lower court had the right to allow an amend- ▮ ment to this pleading, that is, the petition for an order of interpleader, under the broad powers contained in sections 9186 and 9187 of the Revised Codes of 1921. This the lower court saw fit to grant and overruled the objection of the respondents to the filing of the affidavit of C. N. Burgess as an amendment or supplement to the original petition for interpleader. The affidavit of C. N. Burgess and papers annexed thereto were then before the court in the consideration of these demurrers, and as such must have been considered in passing upon the demurrers of respondents. It is true that on the filing of such amendments, the respondents would have been at liberty to withdraw their demurrers and challenge the petition by answer, but they are in this court attempting to sustain their demurrers to the petition for interpleader and the court's ruling thereon, as of the time of the making of such order by the district court, and at that time the amendments had been allowed.

The main question raised, and the main issue involved, is whether the State Bank of Townsend, if all its statements in the petition as amended are true, is in the position of a stakeholder, and this involves the question as to whether the State Bank of Townsend has incurred an independent liability to any of the parties asked to be interpleaded, and more specifically whether or not a stop payment order may be made on a cashier's check when once issued and delivered.

In passing upon the sufficiency of a petition for an order of interpleader, where the court is asked to allow the petitioner to pay the money into court and be discharged from further liability, it is most important to determine the position of the petitioner as a stakeholder before the petition is granted. The right granted under the statutes dealing with interpleader is not to protect from or against a double liability, but assumes to give protection only against double vexation in regard to one liability.

We have been cited to many cases dealing with the liability of banks on cashier's checks, and on certified checks. The general broad statement is made that cashiers' checks and certified checks are not subject to stop payment orders. It is further stated that the liability of a bank on a cashier's check is the same as on a certified check, and that the same power to stop payment does not exist as in the case of ordinary checks. All of these statements, as general statements of the law, are correct, and the application of such principles in the cases cited is undoubtedly correct. But we cannot subscribe to the principle that once a cashier's check is issued, or a check certified, the bank issuing or certifying must pay that check to whomever may present the same without exception. In the hands of a bona fide holder the bank has but one duty, and that is to pay, and the cases are unanimous on this point, even those which hold that a bank may refuse payment under certain circumstances. If the question of notice to the Union Bank & Trust Company did not enter into this case, then its right to the payment of this cashier's

check would be absolute, regardless of any claim made by Burgess or anyone else.

In *McGinn* v. *Interstate National Bank*, 178 Mo. App. 347, 166 S. W. 345, the court said: "It cannot be said that the issuance of the cashier's check was the creation of such an independent liability to one of the claimants as will defeat the right of interpleader. The bank did not agree to pay the check in all events, but only on the implied understanding that it would do so to the one legally entitled thereto."

*Bathgate* v. *Exchange Bank of Chula*, 199 Mo. App. 583, 205 S. W. 875: "The bank in certifying the check at the request of the drawer did not agree that it would pay the check at all events, but only that the amount thereof would be forthcoming if and when presented by one lawfully entitled thereto."

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, ANDERSON and STEWART concur.

Rehearing denied October 9, 1933.