NEPSTAD, RESPONDENT, *v.* EAST CHICAGO OIL ASSOCIATION, INC., APPELLANT.

(No. 7,184.)

(Submitted January 8, 1934. Decided February 1, 1934.)

[29 Pac. (2d) 643.]

184

*Mr. T. H. MacDonald,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Cooper, Stephenson & Hoover,* for Respondent, submitted a brief; *Mr. John D. Stephenson* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from an order denying the motion of the East Chicago Oil Association, Inc., for an execution against the Northern Natural Gas Development Company. The execution was sought to enforce a judgment entered upon a remittitur issued by this court in the case of *Nepstad* v. *East Chicago*

*Oil Assn.*, 91 Mont. 366, 9 Pac. (2d) 1074. A more complete statement of the facts out of which the present appeal arose may be found in the statement of that case.

In April, 1928, Marion W. Edwards contracted to drill a gas-well for appellant East Chicago Oil Association, hereafter called the Chicago company. Subsequently Edwards assigned the contract to Nepstad, a respondent here, who in conformity with the contract drilled the well. The contract provided for payment for the drilling from proceeds of the sale of gas from the well. After the well was completed, the defendant Northern Natural Gas Development Company, hereafter called the gas company, bought, and still is buying, the gas produced from the well. A dispute arose as to whether Nepstad was entitled to the proceeds of the purchased gas by virtue of his drilling contract. The Chicago company claimed that Edwards owed it about $4,000 which should first be satisfied from proceeds of gas sold. This dispute culminated in an action brought by Nepstad against the Chicago company. Judgment was entered for Nepstad, decreeing him a priority right to the proceeds from the gas purchased by the gas company. This company had impounded the proceeds due for the gas it had received, and at the time of judgment in the court below it had on hand the sum of $1,781.58, which sum it held to be paid to the prevailing party.

Proceedings on appeal were perfected by the defendant Chicago company; the judgment of the lower court was reversed and judgment directed for the Chicago company. (See *Nepstad* v. *East Chicago Oil Assn.*, supra.) Judgment was entered on the remittitur in the district court for prior payment from production to the Chicago company of the amount of $1,686.20.

The record discloses that a certified copy of the judgment was served on respondent gas company. This showing was made by the affidavit of T. H. MacDonald, attorney for the Chicago company. The affidavit recites that the gas company collected the sum of money and refused to deliver it to the Chicago company. The affidavit was filed in support of a

motion for execution, which was presented by the Chicago company. The motion and the supporting affidavit required the gas company to show cause why an execution should not issue from the district court against the gas company. The record does not show any answer or return by the gas company, but recites that a hearing was held and briefs were filed and that the matter was taken under advisement by the court. The court made an order denying the motion and refusing to order execution issued. No reasons for the ruling appear in the order or anywhere in the record.

Assuming that the impounded royalty money is in fact still in the possession of the gas company, we find but a simple question to decide. In fact, the question is decided by the statute. (Sec. 9420, Rev. Codes 1921.) If this sum is held by the gas company, it is wrongfully withheld from the Chicago company.

The judgment entered on the remittitur directs the gas company to "pay over to the defendant, East Chicago Oil Association, the said sum of $1,686.20, together with interest thereon at the rate of eight per cent. per annum from the 13th day of May, 1932, the said amount to be paid from production," etc. It must be observed, however, that the judgment is not one for money generally, or one upon which a general execution may properly issue against the gas company. "An execution ▮ must conform to the judgment on which it is issued in every essential particular." (23 C. J. 402, and cases cited; *Petrie* v. *Buffington*, 79 W. Va. 113, 90 S. E. 557; see, also, section 9420, supra.)

Here the judgment provided that the gas company should ▮ pay over certain proceeds from a particular fund, viz., the money owed by it for the gas which it had received. The Chicago company certainly was entitled to have the judgment so entered on the remittitur enforced in some manner. (Sec. 9420, supra.) Section 9420 provides as follows: "When the judgment is for money or the possession of real or personal property, the same may be enforced by a writ of execution; and if the judgment direct that the defendant be arrested, the

execution may issue against the person of the judgment debtor, after the return of an execution against his property unsatisfied in whole or in part. When the judgment requires the sale of property, the same may be enforced by a writ reciting such judgment, or the material parts thereof, and directing the proper officer to execute the judgment, by making the sale and applying the proceeds in conformity therewith. When the judgment requires the performance of any other act than as above designated, a certified copy of the judgment may be served upon the party against whom the same is rendered, or upon the person or officer required thereby or by law to obey the same, and obedience thereto may be enforced by the court.''

It will be noted that this statute provides the manner for the enforcement of three different classes of judgments. In the first two classes the proper method of enforcement is by writ of execution; while in the third class enforcement may be accomplished by the service of a ''certified copy of the judgment'' upon the party against whom it is rendered. The judgment in the instant case comes within the contemplation of the third or last enumerated class. In conformity therewith, the Chicago company in the first instance pursued the proper procedure for the enforcement of the judgment; but thereafter, when the gas company failed or refused to pay the money over as ordered in the judgment, the Chicago company sought a writ of execution against it to enforce the judgment. In asking for a general execution against the gas company, if it did so, it did not proceed in accordance with the statute. (Sec. 9420, supra.) By proceeding as it did, it recognized the fact that this judgment came within that class upon which an ordinary execution could not properly issue and for which another mode of procedure is provided, viz., the serving of a certified copy of the judgment.

The statute provides that obedience to the judgment may be enforced by the court. It does not say that a general execution may issue for levy upon the property of the gas company. The court could have very properly entertained an application to compel obedience to the court's order (as contained in the

amended judgment) but that was not what appellant demanded. While there is nothing in the record disclosing the exact form of order sought, both parties and the court apparently understood that a general execution was demanded. Such being the fact, the court was right in refusing to order its issuance. (Sec. 9420, supra; *Petrie* v. *Buffington*, supra. See, also, 23 C. J. 402, and cases cited.) Conceding, without deciding, that the Chicago company might have sought a special writ of execution directed against a special fund, had it been so held by the gas company, there is nothing in the record to indicate that it held the money in a special or separate fund.

What we have said as to the proper procedure is predicated upon the theory that the money is still in the possession of the gas company; apparently, however, this is not the fact. Both parties in their briefs disclose the fact that the gas company paid the funds over to Nepstad, plaintiff in the original action, during the pendency of the previous appeal.

We must bear in mind that the Chicago company lost the original case in the district court, and that a judgment was there entered for Nepstad awarding him the royalty moneys. The company appealed, but it did not move for a stay of proceedings, as provided for in section 9736, Revised Codes 1921, which reads as follows: ''If the judgment or order appealed from direct the assignment or delivery of documents or personal property, the execution of the judgment or order cannot be stayed by appeal, unless the things required to be assigned or delivered be placed in the custody of such officer or receiver as the court may appoint, or unless an undertaking be entered into on the part of the appellant, with at least two sureties, and in such amount as the court, or a judge thereof, may direct, to the effect that the appellant will obey the order of the appellate court upon the appeal.'' The appellant made no effort to have the funds placed in the hands of an officer of the court or to furnish the undertaking required by the statute.

The Chicago company argues that it was impossible for it to secure a stay of proceedings pending appeal, and

that any stay bond it might have given under the circumstances of this case would have been without consideration and for that reason unenforceable. In support of such contention it cites the case of *McCallion* v. *Hibernia Savings & Loan Soc.*, 98 Cal. 442, 33 Pac. 329. In that case, however, the money in controversy had been deposited in court in compliance with a statute identical with our own, section 9736, supra. Therefore that case does not support its contention. When the Chicago company failed to secure a stay of proceedings of any kind, enforcement of the judgment could properly proceed.

The Chicago company, in support of its contention that it had no power to avoid payment of the money over to Nepstad by furnishing a *supersedeas* bond, cites and relies upon the case of *Halsted* v. *First Sav. Bank,* 173 Cal. 605, 160 Pac. 1075. That case, however, does not support the contention. It goes only to the effect that one of two parties to an action claiming a sum of money held by a third party could stay the execution of the judgment pending the appeal to the higher court. Halsted, plaintiff and appellant, lost the case in the lower court and appealed. He asked for a stay of execution to prevent the payment of the money to Collins, the adverse claimant, during the pendency of the appeal. The court held that a stay could be properly granted under section 943 of the California Code of Civil Procedure, which is identical with our section 9736, supra. That case does not help us much here, except that it discloses a course of procedure which, we think, would have obviated the present situation, and which was available to the Chicago company.

In 2 Cal. Jur. 464, it is said: "The power of an appellate court to issue a writ of *supersedeas* exists in cases where the statute regulating a stay of proceedings on appeal makes no provision for such stay in the particular case, but where the writ is necessary to preserve the *status quo,* so that rights involved in an appeal when determined by the appellate court may not be lost or prejudiced by reason of the intervening execution of the judgment or order appealed from. Hence, it is a general rule, that when the law makes no provision for

a stay, the appellate court should grant a *supersedeas* whenever it is reasonably necessary to protect the appellant from serious injury in case of reversal.'' Under this rule it would seem that the Chicago company could have obtained a writ of *supersedeas* had it desired to do so.

Thus far we have proceeded upon the theory adopted by the parties in their briefs, rather than upon the record. We do not believe we are justified in assuming a record upon which to proceed to an ultimate declaration of the rights of the Chicago company as against the other parties. If we assume, as do the parties, that the money was paid over by the gas company to Nepstad during the pendency of the appeal, and that the payment was so made after some kind of demand, we are still left without a sufficient record. In the circumstances, therefore, we call attention to the fact that this court has held that such a payment is not necessarily to be considered as voluntary. For a discussion of this matter, see *Anderson* v. *Border*, 87 Mont. 4, 285 Pac. 174, 177, *Kaiser* v. *Barron*, 153 Cal. 474, 95 Pac. 879, and *Scholey* v. *Halsey*, 72 N. Y. 578.

In the case of *Anderson* v. *Border*, supra, it was said: '' 'The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done.' (*Baltimore & Ohio R. Co.* v. *United States*, 279 U. S. 781, 73 L. Ed. 954, 49 Sup. Ct. 492, 493; compare sec. 9752, Rev. Codes 1921.) Independently of statutory provisions for the restitution on motion of money paid on execution based on a judgment subsequently reversed or set aside, the right thereto has long been recognized as a rule of the common law, and may be enforced in an independent action. The law implies a promise to restore it to the party from whom it was exacted. (*Chambliss* v. *Hass*, [125 Iowa, 484, 101 N. W. 153, 68 L. R. A. 126, 3 Ann. Cas. 16], supra.) 'Where money is wrongfully and illegally exacted, it is received without any legal right or authority to receive it; and the law, at the very time of payment, creates

the obligation to refund it.' (*Bank of United States* v. *Bank of Washington*, 6 Pet. (U. S.) 8, 8 L. Ed. 299.)'' (See, also, *Burgess* v. *Lasby*, 94 Mont. 534, 24 Pac. (2d) 147.)

Thus it will be observed that there may be two remedies available in this case to the Chicago company. It may upon a proper proceeding force restitution, or it may have an independent action. It must be obvious that this court, with the present meager record before it, is not in a position to adjudicate the matter. We therefore refuse to enter into a discussion of the rights of the parties. We can say that the court did not err in refusing to order a general execution to issue for levy against the property of the gas company. That much is plain. In view of the state of the record, we think that each party should pay its own costs of this appeal.

The order of the district court is affirmed, without prejudice to any of the rights of the parties to the action.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.