O. R. WAGGONER, Plaintiff and Appellant, v. GLACIER
COLONY OF HUTTERITES, an Association, Defendant
and Respondent.

No. 9404.
Submitted May 7, 1957. Decided June 6, 1957.
312 Pac. (2d) 117.

Messrs. Frisbee & Moore, Cut Bank, for appellant.
Messrs. Hoffman & Cure, Great Falls, for respondent.
Mr. Selden S. Frisbee and Mr. H. B. Hoffman argued orally.

MR. CHIEF JUSTICE HARRISON:

On October 24, 1951, default judgment was entered in the district court of Glacier County against the defendant in the sum of $15,974.08. Execution was issued thereon and the sum of $10,624.74 was received by the sheriff from the bank account of the defendant, which sum was then paid over to one of the attorneys for the plaintiff. The attorney then deposited this sum in a trust account and forthwith disbursed the same by delivering to the plaintiff and for his account the sum of $7,-441.33, and to the firm of attorneys representing the plaintiff the sum of $3,201.41.

A previous appeal was heard by this court wherein the defendant appealed from an order denying its motion to set aside the default judgment hereinbefore mentioned. See Waggoner v. Glacier Colony, 127 Mont. 140, 258 Pac. (2d) 1162, 1166. In that cause it appears from the statement of facts that complaint for purpose of recovering damages arising out of an automobile accident was filed September 11, 1951, and service made upon the defendant association on September 13, 1951. Upon that same day members of the defendant association called upon the attorneys for the plaintiff to advise them that the driver of the

truck involved in the accident referred to in plaintiff's complaint never had been a member of the defendant colony and that the truck that was driven was the property of Elm Spring Colony, a resident of the province of Alberta. We stated in our opinion on the former appeal: "As a result of the conversation with Mr. Moore, one of the attorneys for plaintiff, the members of the association having the business in hand, received the impression that the plaintiff's attorneys would investigate the truth of their assertions and that if found correct, the plaintiff's attorneys would bring another action against the Elm Spring Colony, which they considered was the proper party."

Thus on September 13, 1951, one of the attorneys for the plaintiff had been informed there was some question with regard to the proper party defendant, and he so advised the other attorney on the following morning. However, it appears that the default judgment was entered on October 24, 1951. Upon the former appeal we held: "Under the facts and circumstances in this case, the court erred in refusing to set aside the default and the judgment so made and entered. This suit should be tried on its merits and to that end the default and judgment are vacated and set aside, the order and judgment appealed from are reversed and the cause is remanded to the district court for further proceedings consistent with this opinion, with leave granted the defendant to serve and file an answer and defend against the action."

Remittitur was received and filed in district court on July 16, 1953. On July 22, 1953, the district court entered judgment upon the remittitur in accordance with our opinion. On August 6, 1953, the defendant filed a motion for repayment of money seized on judgment whereby it was sought to have the plaintiff and his attorneys account separately for the respective share of moneys received under the levy of the execution, and that each be required to return to the defendant the share or part so received. The matter came on for hearing on September 23, 1953. On December 28, 1953, the court made and entered an order for restitution which, among other things, provided that the de-

fendant do have and recover from the attorneys for the plaintiff the sum of $3,201.41, together with interest thereon at six percent per annum from the 28th day of October, 1951, until paid.

This appeal is prosecuted by the attorneys from said order insofar as the same applies to them, and it is their contention that the order constituted an abuse of the court's discretion, was against the law and was not sustained by any evidence introduced at the hearing.

In support of their contention counsel urge that the rule applicable herein should be:

"Where a final judgment is absolutely vacated, after it has been paid, or satisfied by execution or by possession of the property in controversy, the party benefiting by it should be ordered to make restitution, but not where the judgment is merely opened to permit a defense; in the latter case there should be no order of restitution until after trial and final judgment." 49 C.J.S. Judgments, section 307, page 560.

Thus they contend that a different rule prevails where the order vacating the judgment disposes of the litigation on its merits than where the order of vacation does not do so, being the situation in this case.

In Anderson v. Border, 87 Mont. 4, 285 P. 174, 177, we ▆ stated:

" 'The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done'. Baltimore & Ohio R. Co. v. United States, 279 U.S. 781, 49 S. Ct. 492, 493, 73 L. Ed. 954; compare section 9752, R.C. 1921 [now R.C.M. 1947, section 93-8024]."

The matter of restitution was before the court in the cases of Burgess v. Lasby, 94 Mont. 534, 24 Pac. (2d) 147, and Nepstad v. East Chicago Oil Ass'n, Inc., 96 Mont. 183, 29 Pac. (2d) 643, 646. In the latter case it is stated: "Thus it will be observed

that there may be two remedies available in this case to the Chicago company. It may upon a proper proceeding force restitution, or it may have an independent action.''

In this matter the proceedings for restitution were filed in the original action and no question is raised as to the right of the defendant to so proceed.

R.C.M. 1947, section 58-605, provides: ''One who obtains a thing without the consent of its owner, or by a consent afterwards rescinded, or by an unlawful exaction which the owner could not at the time prudently refuse, must restore it to the person from whom it was thus obtained, unless he has acquired a title thereto superior to that of such other person, or unless the transaction was corrupt and unlawful on both sides.''

While there is a divergence of views as to whether restitution should be ordered before final disposition of the litigation (5 C.J.S. Appeal and Error, section 1982, pages 1543, 1544; 5 Am. Jur., Attorneys at Law, section 147, pages 347, 348; Annotation in 87 A.L.R. 174; Restatement of the Law, Restitution, section 74, page 302; 3 Am. Jur., Appeal and Error, section 1243, page 741), yet we believe that most authorities agree that restitution should be granted when to do otherwise would give offense to equity and good conscience.

The special knowledge, possessed by counsel for plaintiff before entry of the default judgment and by reason of which it was set aside on the former appeal, requires us to adopt the view that equity and good conscience require restitution by counsel as ordered by the district court. The order for restitution entered in the district court is affirmed.

MR. JUSTICES CASTLES, BOTTOMLY, ANGSTMAN and ADAIR, concur.