# CHARLESTON.

## PETRIE v. BUFFINGTON, SHERIFF.

Submitted October 17, 1916.   Decided October 31, 1916.

1. BANKRUPTCY—*Administration of Estate—Actions—Jurisdiction of Equity.*

    Where a husband is insolvent and sells a part of his property for cash, and gives the purchase money to his wife without any consideration, she having no other property, and he then immediately applies for a discharge from his debts under the bankruptcy laws of the United States, the' trustee in bankruptcy of such person may maintain a suit in equity in a state court, prohibiting the wife from disposing of the money, and for the appointment of a receiver to take charge of the money and preserve it for the benefit of the bankrupt's estate, and to require the wife to deliver the money to the trustee. (p. 117).

2. SAME—*Administration of Estate—Action by Trustee—Appointment of Receiver.*

    Where it is alleged in the bill such as indicated in the foregoing syllabus, that a husband being insolvent gives money, the proceeds of his property sold while he was insolvent, to his wife, who has no other property, and then immediately (that is within a few days) thereafter applies for a discharge in bankruptcy, and it is alleged in the bill that the wife has the money in her possession and refuses to deliver it to the trustee, that the transfer to her was without consideration and void under the bankruptcy act, and that he has the right to avoid such transfer to receive the money and to hold and disburse it for the benefit of the bankrupt's estate, and the wife appears to the bill and admits that the allegations of the bill are true, a special receiver may be appointed to take charge of such money and keep the same until the further order of the court. (p. 117).

3. CONSTITUTIONAL LAW—*"Due Process of Law"—Order of Court.*

    In such case, above stated, the suit having been regularly proceeded in, the bill filed, and the defendant having appeared in the cause, with opportunity to defend, and having admitted the allegations of the bill, the order directing the delivery of the property to the receiver was not in contravention of the Fourteenth Amendment to the Constitution of the United States in that it deprives the defendant of her property without "due process of law.'" (p. 118).

4. CONTEMPT—*Acts Constituting—Disobedience to Order.*

    Where a lawful order has been made by a court having jurisdiction over the person and subject matter appointing a receiver

for personal property, and requiring a person having possession of the property, who is a party to the suit, to deliver such property to a special receiver, and he refuses to do so, he may be punished for contempt for disobedience to such order.  (p. 119).

5.  SAME—*Proceedings to Punish—Power in Vacation.*

A judge of a circuit court has authority, in vacation of the court, to punish for a contempt for a disobedience to a lawful order of such court.  (p. 120).

6.  EXECUTION—*Decree for Delivery of Money—Construction and Operation.*

A decree of a court requiring a person to deliver to a receiver of the court a certain specified parcel of money, is not a decree for the payment of money such as execution might issue thereon and be levied on the defendant's other property.  It is in the nature of a proceeding *in rem*, affecting this particular property only.  (p. 119).

7.  CONTEMPT—*Punishment—Commitment.*

It is competent for a court, or judge thereof in vacation, having jurisdiction to punish for contempt, to inflict punishment on one who refuses to obey an order or decree of the court, by committing him to jail until he obeys such order, if the order is such that the defendant may obey.  (p. 120).

Original application by Bertie Petrie for writ of habeas corpus to P. C. Buffington, sheriff, etc.

*Writ dismissed, and prisoner remanded.*

*Daugherty & Riggs,* for petitioner.

*Geo. S. Wallace,* for respondent.

MASON, JUDGE:

E. O. Petrie, husband of the petitioner Bertie Petrie, was adjudicated a bankrupt in February, 1916.  Philip P. Gibson was elected trustee of the said bankrupt estate.  Shortly before Petrie was adjudicated a bankrupt, and while he was insolvent, he sold some of his property, receiving $500.00 from the purchaser.  Within a few days after receiving it, he transferred this money to his wife it is alleged without valuable consideration.

On the 27th day of April, 1916, the said Gibson as trustee filed his bill in the circuit court of Cabell County, West Vir-

ginia, alleging that prior to the date of said adjudication of E. O. Petrie as a bankrupt, he (Petrie) sold certain valuable estate belonging to him to his brother, receiving therefor the sum of $500.00, and that within a few days thereafter he transferred the said sum of $500.00 to his wife, without consideration; and that he as such trustee has the right to avoid such transfer and to receive from her the said sum of $500.00 for the benefit of said bankrupt's estate; that he demanded the said sum of $500.00 from her; that she admitted she had the money, but refused to deliver it to him as such trustee. It is also alleged in said bill that said Bertie Petrie has no property of any kind except the said $500.00, and that before the same could be recovered from her by judgment of law, she could dispose of the same, and such judgment would be unavailing. The bill further alleges that "he is entitled to have the identical sum of five hundred dollars in the possession of the said Bertie Petrie turned over to him under the provisions of said act of bankruptcy." The bill asks that the said Bertie Petrie be enjoined from transferring or disposing of the said $500.00; that a receiver be appointed to take charge of and conserve the said sum of $500.00; and that a decree may be entered adjudicating that the complainant as trustee, etc., may recover of and from said Bertie Petrie the said sum of $500.00 given to her by her hsuband.

On the 6th day of May, 1916, the parties appeared in court, and counsel for the said Gibson moved the court to appoint a receiver for said $500.00 in the bill mentioned and described. It was thereupon agreed between the parties "that for the purpose of this motion that the allegations of the plaintiff's bill may be regarded as true." Thereupon the court appointed the Union Savings Bank and Trust Company receiver of the said $500.00 and authorized it to take possession thereof and to keep the same in its bank until the further order of the court. It was further ordered and decreed that the said Bertie Petrie be and she was thereby required to turn over to the said receiver the said sum of $500.00 decreed in plaintiff's bill. The said Bertie Petrie refused to obey this order.

On the 27th day of May, 1916, the plaintiff, Philip P. Gib-

son, trustee, appeared in court and filed the affidavit of A.
H. Dickinson, stating that after said Bertie Petrie was served
with a copy of said order of May 6, 1916, directing her to
turn over to the Union Savings Bank and Trust Company
the said sum of $500.00, she declined and refused to obey
said order; and thereupon the said Gibson moved the court
that a rule be issued against her to appear and show cause if
any she can why she should not be fined for contempt of court
for failing to comply with said order. A rule was issued
against her as prayed for, returnable June 3, 1916. On the
3rd day of June, 1916, the Honorable John T. Graham,
Judge of said court entered an order in vacation of court,
reciting that the said Bertie Petrie "not showing or asking
to be allowed to show any further or other cause why she
should not be attached or otherwise proceeded against for her
failure to comply with the order of this Court made on the
29th day of May, 1916, and the order of this Court made on
the 6th day of May, 1916, and mentioned in said rule, it is
ordered that the sheriff of the County attach the body of said
Bertie Petrie and keep her in safe custody in the jail of Cab-
ell County aforesaid until the further order of this court."

The said Bertie Petrie was arrested by virtue of said or-
der, and taken into the custody of the said sheriff, and taken
before the said judge of the said court, in vacation, and she
moved the court "to discharge the attachment heretofore
awarded against her, upon the ground that the court was
without jurisdiction to award said attachment and assigns
as a reason therefor that the bill heretofore filed in the chan-
cery cause of Philip P. Gibson, trustee, etc. vs Bertie Petrie,
was without equity, which motion was argued by counsel and
was overruled and the said defendant Bertie Petrie, not show-
ing or asking to be allowed to show any further or other
cause why she should not be attached or otherwise proceeded
against for her failure to comply with the order of this court
made on the sixth day of May, 1916, and with the order of
the Circuit Court of Cabell County," and the judge again or-
dered "that the sheriff of said County do attach the body of
Bertie Petrie and keep her in safe custody in the jail of the
County aforesaid, until she complies with said order of the

Circuit Court of Cabell County, West Virginia, entered here-in on the sixth day of May, 1916, in the chancery cause of Philip P. Gibson trustee, etc. vs Bertie Petrie.''

The said sheriff, on the 23rd day of September, 1916, again took said Bertie Petrie into his custody under said order of June 24th, whereupon the said Bertie Petrie filed her petition in this court, stating the foregoing facts and praying that a writ of habeas corpus ad subjiciendum be granted her, etc., and that the said sheriff be required to show cause if any he can why she is detained by him and not delivered up and discharged, etc. The writ was issued, and the said sheriff for return thereto, by consent of the parties, made copies of the injunction proceedings and the orders of attachment parts of his return, and moved to quash the writ.

The petitioner demurred to the return. The only question to be determined by this court is whether or not the said rec-ord presents a case which authorized the judge to make the order attaching her. The petitioner claims that her detention is unlawful for the following reasons:

''First: Because the said Circuit Court had no jurisdic-tion, power, or authority to make and enter the said order of May the 6th, 1916, requiring your petitioner to turn over to the Special Receiver the said sum of five hundred dollars, and that said order was therefore void.

''Second: That your petitioner is being imprisoned for a debt, and the Circuit Court has no jurisdiction or power conferred by law to order such imprisonment in such a proceeding.

''Third: Because the judge of the circuit court is with-out jurisdiction to enter the said order of June 24, 1916, in the vacation of the court, and that therefore the same is void.''

It is provided by section 28, chapter 133 of the Code, that, ''A court of equity may in any proper case pending therein, in which the property of a corporation, firm or person is in-volved, and there is danger of the loss or misappropriation of the same or a material part thereof, appoint a special receiver of such property or of the rents, issues and profits thereof.'' The court is by this statute authorized to appoint a special

receiver in any "proper case". If the facts admitted in this record do not make a "proper case" for the appointment of a special receiver for the protection and preservation of the property, it would be difficult indeed to imagine what constitutes a "proper case". Of course the appointment will not be made until it is made to appear that there is danger of the loss or misappropriation of the property or a material part thereof. It is admitted in this case that the money was the property of an insolvent debtor about to avail himself of the bankruptcy laws of the United States; that he gave the money to his wife without consideration while he was insolvent; that she had no property except this five hundred dollars; that she has the money and declines to return it to her husband's trustee in bankruptcy; and that the said trustee has the right to avoid the transfer of the money. At any rate the court has jurisdiction of the parties and the subject matter, and if the order was erroneous the defendant had no right to disregard it.

The receiver was by the decree of May 6, 1916, authorized to receive and take possession of the said $500.00 and to keep it in its bank until the further order of the court; and the said Bertie Petrie was required by the same decree to turn over to the receiver the said sum of $500.00 described in the bill. This was a binding decree justified by her admission in the cause. She should have obeyed it. If she had any reason for not delivering the money to the trustee, she should have made defense to the bill. Instead of doing this, she admitted she had the money and gave no reason for refusing to deliver it to the trustee.

In no proper sense can it be said that Mrs. Petrie was deprived of her property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States as claimed by counsel for petitioner. There was a pending suit against her involving the possession of this particular money. She appeared to the bill in court and made such defense as she deemed proper to make; and upon consideration of the bill and her statement in reply thereto, the decree was entered. There was the usual summons, and bill alleging a cause of action, and her appearance to the bill

and admissions of all the allegations of the bill, and decree thereon. Clearly this was due process of law. Many law writers and judges have defined what is meant by "due process of law" and the "law of the land," none perhaps more accurate than that given by Daniel Webster in the *Dartmouth College Case*, 4 Wheaton, 581, as follows: " By the law of the land is most clearly intended the general law; a law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." "A court of equity, ancillary to its jurisdiction to set aside a fraudulent transfer of property, may take the steps necessary to preserve the property involved during the pendency of the litigation." *Keneweg Co. et al. v. Schilansky et al.*, 47 W. Va. 287, syllabus 1.

Upon Mrs. Petrie's refusal to comply with the order of the court, a rule was served on her requiring her to appear and show cause why she should not be fined and punished for the failure to comply with the order of the court theretofore entered. On the 3rd day of June, 1916, the judge of the circuit court, in vacation of said court, entered the order hereinbefore referred to. Petitioner appeared before the judge of the said court again in vacation, and the order of June 24, 1916, hereinbefore referred to, was entered. Under this order the sheriff took the petitioner into custody and still holds her in his custody.

The petitioner insists that this order is illegal, not only because the court was without jurisdiction, but because the order is in effect an imprisonment for debt. Counsel correctly states the law of this state that a "decree or order requiring the payment of money shall have the effect of a judgment," etc. If this were a decree for the payment of money, it could not be enforced by contempt proceedings. But counsel misinterprets the decree of May 6th. It is not a decree for the payment of money, but an order requiring the petitioner to turn over to the receiver a certain specified parcel of money described in the bill and admitted by her to be in her possession. She was required to deliver the identical money in her possession received by her from her husband. This is quite a different thing from a judgment for money generally. The

receiver was not attempting to collect a debt from the defendant but to get possession of property which she held; and the court directed this property to be delivered to the receiver, not that she pay a debt.

It is further urged that the order of June 24th is illegal and void because it ordered the sheriff to attach the body of the petitioner and keep her in his custody and jail perpetually, and because no definite punishment is fixed for the alleged contempt, and for the further reason that the circuit court is without jurisdiction to enter said order in vacation of the court.

Section 27, chapter 147 of the Code, expressly confers upon judges power to punish in vacation certain classes of contempts, including disobedience of orders and decrees. The fact that contempts partake of the nature of criminal offenses, does not preclude legislative power for punishment thereof by summary proceedings. *State* v. *Hansford,* 43 W. Va. 773; *State* v. *Fredlock,* 52 W. Va. 232; *Coal & Coke Co.* v. *Ritz,* 60 W. Va., at page 412.

The order is not void, because it required the petitioner to be kept in custody until she complies with the order of the court, not perpetually, but only until she complies, etc. *State* v. *Irvin,* 30 W. Va. 417. Counsel for petitioner is in error in construing this order to be for perpetual confinement. It was only until she complied with the order of the court. Under section 27, chapter 147 of the Code, contempt proceedings will lie for acts done and beyond recall of the party doing it, also for "disobedience * * * to any lawful process, judgment, decree or order" of the court. For violation under the first clause, that is, acts done which can not be recalled by the wrongdoer, a specific fine or term of imprisonment, or both when authorized, should be fixed by the sentence, but in all cases where a party can undo the wrongful act, as by obeying the order or decree, the punishment may be continued until the wrongdoer ceases to be recalcitrant, and thus discharges himself. *State* v. *Irvin, supra,* at pages 416-7-8; *State* v. *Bridge Company,* 16 W. Va. 890; *State* v. *Frew,* 24 W. Va. 416; *Purcell* v. *Purcell,* 4 Hen. & Munf. 507; *Yates' Case,* 4 Johns. Law, at page 375. The case

of *Ruhl* v. *Ruhl*, 24 W. Va. 286, there is an expression in the opinion of the court that, " it (the order) is erroneous because it failed to define the term of imprisonment." This expression is not in any syllabus of the case, and this court in *State* v. *Irvin*, *supra*, at page 420, disapproves this part of that opinion. If this were not the law, an irresponsible person might defy the court, and the administration of justice would be absolutely prevented.

The petitioner may be restored to her liberty at any time by obeying the laws of that state to whose courts she appeals. This court can not justify her in refusing to obey the laws which it is our duty to enforce.

The writ will be dismissed and the prisoner remanded.

*Writ dismissed and prisoner remanded.*