STATE OF WEST VIRGINIA,

*ex rel.* CAROLYN ROBINSON

*v.*

NELSON M. MICHAEL, ESQUIRE, *Prosecuting Attorney In And For Mineral County, West Virginia, Succeeded By Daniel C. Staggers*

(No. 15084)

Decided April 3, 1981.

R. *Pierce Kelley, Jr.*, for relator.

*Chauncey H. Browning*, Attorney General, *and Silas B. Taylor*, Assistant Attorney General, for respondent.

*W. Va. Prosecuting Attorneys Association by Leo Catsonis*, amicus curiae.

McHugh, Justice:

This is an original proceeding in mandamus wherein the petitioner, Carolyn Robinson, seeks to compel the respon-

dent, the Prosecuting Attorney of Mineral County, Daniel C. Staggers, who succeeded Nelson M. Michael, to represent her in a contempt proceeding. By an order of the Circuit Court of Mineral County, dated September 9, 1975, Marlin Dennis Robinson, the former husband of the petitioner, was required to pay $100.00 per month for the support of their two children and $50.00 per month as alimony. The petitioner, on March 27, 1980, sought to have Marlin Dennis Robinson held in contempt of court for his failure to comply with the order of September 9, 1975. The petitioner argues that the respondent should act as her attorney in the contempt proceedings in Mineral County. The respondent asserts that the contempt proceeding is civil in nature and, therefore, he is not required to act as counsel for the petitioner; or, in the alternative, if the contempt is criminal, it is a matter within his discretion as to whether he should act in the case.

A review of the distinction between civil and criminal contempt is necessary to the decision in this case. The law of contempt is frequently a source of confusion. The usual confusion associated with this area of law arises in classifying the contempt as civil or criminal and in distinguishing the purpose to be served by imposing a sanction for the contempt. The history of contempt in West Virginia reflects that confusion.

In *State ex rel. Mason v. Harper's Ferry Bridge Co.*, 16 W.Va. 864 (1879), this Court recognized that contempt can serve a dual purpose: either to force compliance with a court order or to punish disrespect of the court.[1] This Court combined those purposes in *Mason*. In that case the contempt action was instituted after the defendants had violated an injunction against building a bridge across the

---

[1] This Court also recognized the source and necessity of such powers, saying:

The right of this court to punish for [contempt] is inherent and essential for its protection and existence. The discretion involved in this power is in a great measure arbitrary and undefinable; and yet the experience of ages has demonstrated that this arbitrary discretion in courts is perfectly compatible with civil liberty and auxiliary to the ends of justice.

16 W.Va. at 888.

Shenandoah River. This Court fined the defendants but also ordered their incarceration until such time as they paid the fine. A similar order was used in *State v. Frew & Hart*, 24 W.Va. 416 (1884). Thus, the combination of purposes, coercion and punishment, that frequently creates the confusion associated with contempt entered our law at a very early date.

That confusion was further exacerbated in subsequent cases. In *Ruhl v. Ruhl*, 24 W.Va. 279 (1884), the alleged contemner refused to comply with an order of a municipal court to satisfy a judgment. The municipal court ordered the defendant attached and held until "further order of this court." The case was appealed and the issue on appeal was whether such an order in chancery could be reviewed on appeal or only on a writ of error.[2] This Court said: "A contempt of court is in the nature of a criminal offence, and the proceeding for its punishment, is in its character a criminal proceeding .... A court cannot prevent the reversal of an erroneous order by entering it in the wrong order book." 24 W.Va. at 283. This Court noted that the order was "also erroneous because it failed to define the term of the imprisonment .... Even if it had been proper to commit the appellant, the order should have shown a conviction for the offence and the term of his imprisonment should have been defined." 24 W.Va. at 286.

Three years later this Court had occasion to further limit civil contempt. The case of *State v. Irwin*, 30 W.Va. 404, 4 S.E. 413 (1887), involved a contract to sell land. The alleged contemner refused to transfer the land and the prospective purchaser sought an injunction to prohibit the transfer or

---

[2] At the time of the *Ruhl* decision there were two major distinctions between a writ of error and an appeal: (1) permission from the trial court was necessary to prosecute an appeal while the writ of error was grantable *ex debito justitiae*; and (2) an appeal was used in equity proceedings while the writ of error was used in law causes. *See generally* 1B Michie's Jur., Appeal and Error § 12 (1980), and cases cited therein. The distinction has been effectively abolished in modern practice in this State. *See* W.Va. Sup. Ct. R. App. R.1(c) (1980).

encumbrance of the land in violation of the contract. Before bond was posted on the injunction, the alleged contemner conveyed a portion of the land to a third party. An order to show cause was issued on the chancery side of the court, returnable to it. The circuit court, acting in its equity jurisdiction, found the seller to be in contempt and ordered his confinement until such time as he purged himself by specific performance of the contract. The seller appealed. This Court recognized the existence and validity of the distinction between civil and criminal contempt.[3] The role of civil contempt, however, was severely restricted on the basis of two procedural considerations. The first was the question of appeal previously addressed in *Ruhl, supra.* The second was the interpretation of the contempt statute

---

[3] This Court said, quoting *People v. Court of Oyer & Terminer,* 101 N.Y. 245, 247, 4 N.E. 259 (1886):

In one class are grouped cases whose occasion is an injury or wrong done to a party who is a suitor before the court and has established a claim upon its protection; and which result in a money indemnity to the litigant, or a compulsory act or omission enforced for his benefit. In these causes, the authority of the court is indeed vindicated, but it is after a manner lent to the suitor for his safety and vindication, for his sole benefit. The authority is exerted in his behalf as a private individual, and the fine imposed is measured by his loss, and goes to him as indemnity, and imprisonment, if ordered, is awarded not as a punishment, but as a means to an end,—and that end the benefit of the suitor in some act or omission compelled, which are essential to his particular rights of person or of property * * *. The second class of cases consists of those whose cause and result are a violation of the rights of the public, as represented by their constitued legal tribunals, and a punishment for the wrong is in the interest of public justice, and not in the interest of an individual litigant. In these cases, if a fine is imposed, its maximum is limited by a fixed general law, and not at all by the needs of individuals, and its proceeds, when collected go into the public treasury, and not into the purse of an individual suitor. The fine is punishment, rather than indemnity, and, if imprisonment is added, it is in the interest of public justice, and purely as a penalty, and not at all as a means of securing indemnity to an individual. Necessarily, these contempts in their origin and punishment, partake of crimes, which are violations of public law, and end in the vindication of public justice."

30 W.Va. at 410-412.

then in effect.[4] As a result of these considerations this Court held that all contempt cases must be treated on the law side of the court after the return of the order.[5] This Court carefully chose its language in an attempt to preserve civil contempt while dealing with the procedural questions that would allow appeal of contempt orders.[6] The

---

[4] The statute, *W. Va. Code*, ch. 147, §§ 27 & 28 (1868), provided:

27. The courts and judges thereof may issue attachments for contempts and punish them summarily only in the cases following: First, misbehavior in the presence of the court or so near thereto as to obstruct or interrupt the administration of justice; secondly, violence or threats of violence to a judge or officer of the court or to a juror, witness, or party going to, attending or returning from the court, for or in respect of any act or proceeding had, or to be had, in such court; thirdly, misbehavior of an officer of the court in his official character; fourthly, disobedience or resistance of any lawful process, judgment, decree or order of the said court.

28. No court, shall, without a jury, for any such contempt as is mentioned in the first class embraced in the preceding section, impose a fine exceeding fifty dollars or imprison more than ten days. But in any such case the court may impanel a jury (without an indictment or other formal pleading), to ascertain the fine or imprisonment proper to be inflicted, and may give judgment according to the verdict.

This Court interpreted the statute to mean that all contempts were criminal in nature and that all returns, therefore, had to be to the law side of the court. This construction of the statute was thought to be necessary in order to allow appellate review of contempt orders under then existing procedural law. *See* n.2, *supra*. The statute survived constitutional attack in *State v. McClaugherty*, 33 W.Va. 250, 10 S.E. 407 (1889).

[5] This Court said:

The change made by the statute is that all contempts are now in the nature of criminal offenses; and alhough [*sic*] the rule may be issued in the original suit, when it is returned served upon the defendant, then the contempt proceeding must be entitled in the name of the State against the offender . . . and be entirely separate from the original case.

30 W.Va. at 419.

[6] This Court said, for example, "As we have seen, the right in certain causes to imprison during the pleasure of the court is not taken away." 30 W.Va. at 419. This Court also overruled *Ruhl, supra*, to the extent that *Ruhl* had required a determinate sentence in all contempt cases:

It was not necessary to the decision of *Ruhl v. Ruhl* . . . to hold, in the language of the opinion,—and, as it is not in the syllabus, we

effect of the case, however, was to end civil contempt for a period of time in this State. Cases arising between 1884 and 1918 generally ignored the preservative language of *Irwin* and concentrated on that language which held all contempts to be criminal.[7]

The erroneous holding and subsequent misinterpretation of *Ruhl* and *Irwin* began to erode in *Petrie v. Buffington*, 79 W.Va. 113, 90 S.E. 557 (1916). In that case the alleged contemner refused to obey an order to turn over property to a court appointed receiver and was committed to jail until such time as she would obey the order. She then sought a writ of habeas corpus in this Court. The writ was denied and this Court approved the use of an indeterminate sentence in the case: "The petitioner may be restored to her liberty at any time by obeying the laws of that state to whose courts she appeals. This court can not justify her in refusing to obey the laws which it is our duty to enforce." 79 W.Va. at 121. The *Petrie* court again disapproved the language in *Ruhl, supra,* which required a determinate sentence in all contempt cases.

*Ex parte Beavers*, 80 W.Va. 34, 91 S.E. 1076 (1917), was also a habeas corpus proceeding. In that case the petitioner had been imprisoned for an indeterminate term for failure to pay alimony as required by a divorce decree. The

---

feel no hesitation in saying that we now disapprove so much of said opinion as holds,—that in a contempt case generally, that the term of imprisonment must be fixed, and that courts in such cases have no right to imprison "until further order of the court." 30 W.Va. at 420.

[7] *See, e.g., State v. Jasper*, 78 W.Va. 385, 88 S.E. 1096 (1916); *State ex rel. Fortney Lumber and Hardware Co. v. Baltimore and Ohio Railroad Co.*, 73 W.Va. 1, 79 S.E. 834 (1913); *Powhatan Coal and Coke Co. v. Ritz*, 60 W.Va. 395, 56 S.E. 257 (1906); *State v. Fredlock*, 52 W.Va. 232, 43 S.E. 153 (1902); *State v. Hansford*, 43 W.Va. 773, 28 S.E. 791 (1897); *State v. Ralphsnyder*, 34 W.Va. 352, 12 S.E. 721 (1890); *State v. Cunningham*, 33 W.Va. 607, 11 S.E. 76 (1890). The main issues in those cases were appealability, the effect of invalidity of the order violated, and the classification of the contempt as direct or constructive; they did not consider the distinction between civil and criminal contempt. In *Ex parte Mylius*, 61 W.Va. 405 at 406, 56 S.E. 602 (1907), this Court, citing *Irwin*, said "A proceeding for contempt is a criminal proceeding."

proceeding in *Beavers* was not authorized by statute at that time. The Court held that the order of commitment was remedial and dismissed the writ. The entire proceeding had been on the chancery side of the circuit court and the dismissal of the writ, in effect, sustained chancery jurisdiction to employ the contempt sanction.

The confusion illustrated by this line of cases, and the conflicts among the cases, was addressed directly in *Smith v. Smith*, 81 W.Va. 761, 95 S.E. 199, 8 A.L.R. 1149 (1918). The factual situation was essentially the same as was found in *Beavers, supra.* This Court noted that prior decisions uniformly agreed that every contempt proceeding is criminal in nature, but also observed that, in each of those cases, "the alleged contempt consisted of the doing of a forbidden act and the object of the proceeding was punishment." 81 W.Va. at 768. This Court found the holding in *Irwin* to be erroneous and the source of a "highly confused, illogical and unnecessarily cumbersome procedure." 81 W.Va. 769. This Court then held:

> As the construction [of *Irwin*] has no foundation in law, fact or reason, it must be rejected and, in consequence of its rejection, the practice formerly existing and recognizing the difference between civil and criminal contempt is reinstated. * * * In so far as the decisions herein referred to deny to courts of equity jurisdiction over purely civil contempts, they are disapproved and overruled."

81 W.Va. at 769-770.[8]

---

[8] This Court's reasoning for this action remains persuasive:
Without power and authority to [sanction civil contempt], a court of equity would be unable in many instances, to effectuate legal right and justice between the parties. To make such a proceeding purely criminal in legal contemplation and limit the jurisdiction to the law courts necessarily strips the courts ... of power essential to the due and efficient exercise of their jurisdiction. . . .
81 W.Va. at 770. Similarly, the Court in *Petrie, supra,* noted that if a court had no power to coerce compliance with an order by a civil contempt proceeding "an irresponsible person might defy the court, and the administration of justice would be absolutely prevented." 79 W.Va. at 121.

The case presently before us was commenced when the petitioner sought an order to show cause why her former husband should not be held in contempt for failure to pay support as required by a prior divorce decree. When the rule to show cause was returned, the circuit judge transferred the case to the criminal docket as a misdemeanor. The circuit judge was acting under the impression that this action was required by this Court's recent opinion in the case of *Hendershot v. Hendershot*, 263 S.E.2d 90 (W.Va. 1980). The circuit judge said: "It would appear that there's an imminent danger that Mr. Robinson could end up in the Mineral County Detention Center. Under the Supreme Court holding recently that makes this a criminal case." The petitioner's counsel sought to distinguish this case as a civil contempt in which the respondent below would be able to cure the contempt by compliance with the divorce decree. The circuit judge rejected the distinction and read *Hendershot* to mean that all contempt cases are criminal matters: "The Supreme Court has said that any charge of contempt is a criminal charge, period."

In *Hendershot* the appellant was sentenced to serve ninety days in jail and fined five hundred dollars ($500.00) upon a charge that he had violated a court order contained in a divorce decree. Specifically, the appellant allegedly conspired with his son to remove the appellant's grandchild from the State. Custody of the grandchild was to be with the appellant's former daughter-in-law. The trial court refused appellant's request for a jury trial and found him guilty of criminal contempt.

The appellant contended that he had a right to a jury trial under the provisions of Article III, Section 14 of the *West Virginia Constitution*. This Court reversed the appellant's conviction for criminal contempt and awarded him a new trial, holding:

> It should again be emphasized that our holding is narrow and only to the effect that Article III, Section 14 of the West Virginia Constitution prohibits imprisonment without a jury trial in a criminal contempt proceeding where the contemnor is sentenced and the sentencing order does

not provide him an opportunity to purge the contempt. It is not applicable where the sentencing order contains the condition that the contemnor can gain immediate release by purging himself of the contempt by performing an act that is within his power to accomplish.

263 S.E.2d at 97.

*Hendershot* does not stand for the proposition that all contempts are to be treated as crimes and it did not abolish civil contempt. We were very careful in *Hendershot* to note that the holding of the case—that a jury trial is required in an indirect[9] criminal contempt case—does not apply to a civil contempt case where the purpose is not punishment and the contemner is given a chance to purge the contempt.[10]

---

[9] In addition to the distinction between civil and criminal contempts discussed in detail in this opinion it is also possible to distinguish between direct or indirect contempt. Conduct that occurs in the actual physical presence of the court which the judge actually sees or hears in its entirety may be treated as a direct contempt. Any conduct that may constitute contempt which occurs entirely or partially outside of the actual physical presence of the court may only be treated as an indirect contempt. There are, therefore, four possible classifications of contempt: direct-criminal, indirect-criminal, direct-civil, and indirect-civil. It is widely recognized that due process requirements vary in their applicability to contempt cases depending upon the nature of the contempt involved. *See, e.g., Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Eastern Associated Coal Corp. v. Doe,* 220 S.E.2d 672 (W.Va. 1975). In *Smoot v. Dingess,* 236 S.E.2d 468, 473 (W.Va. 1977), it was said: "[U]ndoubtedly, due process requirements will differ where the act of contempt occurs in the courtroom, since there is an immediate need to preserve orderly judicial procedure." (Miller, J., concurring.) *Hendershot* did not abolish the distinction between direct and indirect contempt. *See, e.g., State v. Boyd and Askin,* No. 15064, Slip Opinion, April 3, 1981. *Hendershot* states the due process requirements for that type of contempt which is classified as indirect criminal contempt. The distinction between direct and indirect contempt with its attendant consequences is not at issue in the case presently before us.

[10] We explicitly recognized the continuing existence and validity of the distinction between civil and criminal contempt when we said:

"[I]t appears that a contempt will be deemed criminal when a jail sentence is imposed and the contemnor is given no opportunity in

Whether a contempt is classified as civil or criminal does not depend upon the act constituting such contempt because such an act may provide the basis for either a civil or criminal contempt action. Instead, whether a contempt is civil or criminal depends upon the purpose to be served by imposing a sanction for the contempt and such purpose also determines the type of sanction which is appropriate. *See United States v. Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

The contempt is civil where the purpose to be served by imposing a sanction for contempt is to compel compliance with a court order by the contemner so as to benefit the party bringing the contempt action by enforcing, protecting, or assuring the right of that party under the order. *See Gompers v. Bucks Stove and Range*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *Court of Oyer & Terminer*, n.3, *supra*. The appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term and that also specifies a reasonable manner in which the contempt may be purged thereby securing the immediate release of the contemner, *see Gompers, supra*; *Hendershot, supra*, or an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the order. *See Court of Oyer & Terminer*, n.3., *supra*; *State ex rel. Floyd v. Watson*, 254 S.E.2d 687 (W.Va. 1979).

The contempt is criminal where the purpose to be served by imposing a sanction for contempt is to punish the contemner for an affront to the dignity or authority of the court, or to preserve or restore order in the court or respect for the court. *See McCrone v. United States*, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108 (1939). The appropriate sanction in a criminal contempt case is an order sentencing the contemner to a definite term of imprisonment or an order requiring the contemner to pay a fine in a determined amount. *See McCrone, supra*; *Hendershot, supra*.

---

the sentencing order for immediate release by purging himself of contempt by doing an act which is within his power to accomplish." 263 S.E.2d at 93.

A rational distinction can thus be established between civil and criminal contempt. *See* Dobbs, "Contempt of Court: A Survey," 56 Corn. L. Rev. 183 (1971); Comment, "The Coercive Function of Civil Contempt," 33 U. Chi. L. Rev. 120 (1965). An act itself may well constitute the basis for either civil or criminal contempt, but the Court's purpose in employing the contempt sanction determines the classification. That an act is punished as neither wholly civil nor altogether criminal reflects an impermissable confusion or combination of purpose on the part of the sanctioning court.

The circuit judge viewed the case presently before us as one in which a party to litigation sought to force another party to comply with an order of the court. The circuit judge recognized that the purpose of such coerced compliance is to benefit the party litigant. In his order of September 30, 1980, denying the petitioner's motion to compel the prosecuting attorney to associate with the case the circuit judge said: "The prime purpose for the petition would appear to be the collection of back monies due and owing by Marlin Dennis Robinson. This is purely a private matter . . . ." The purpose to be served by employing the contempt power determines what sanction will be appropriate and the classification of the contempt. It is clear that the purpose to be served here is to force compliance with a court order for the benefit of one of the litigants in a case before the court. It is, therefore, clear that this case should have been handled as a civil contempt.[11]

---

[11] The proper sanction is the imposition of an order of commitment for an indeterminate period, or amount, that also specifies a reasonable manner in which the contemner may purge the contempt. *See, e.g., Floyd, supra.* The circuit judge was also concerned that the alleged contemner may not have the ability to purge himself of the contempt by paying the full amount owing under the decree. Such a concern alone does not convert the case to criminal contempt. Some other manner of compliance may be mandated such as an agreement to an installment plan, or a promise to comply. *See Eastern Associated Coal Corp.,* n.10, *supra.* There was also evidence that payment may have been rendered unlikely due to deliberate actions of the alleged contemner. If such is the case, the contemner should not be able to avoid the coercive purpose of civil contempt by his own misdeeds. Such

The specific relief sought in this case is a writ of mandamus ordering respondent, the Prosecuting Attorney of Mineral County, to associate with the prosecution of the contempt case in the circuit court. This is a case of civil contempt. The narrow question presented, therefore, is whether a prosecuting attorney is to be required to act as the attorney for a petitioner in a civil contempt action. This is an issue of first impression in this jurisdiction although courts elsewhere have addressed similar questions.

The purpose of a civil contempt proceeding is to preserve or enforce the rights of a private party and to compel obedience to a court order that benefits such party. Courts which have considered the issue have held that only a party that has a right under a court order that has been violated, and who is seeking enforcement or protection of that right, may institute a civil contempt action. *See, e.g., In re Paleais,* 296 F. 403 (2d Cir. 1924); *Williams v. Iberville Parrish School Board,* 273 F.Supp. 542 (E.D. La. 1967); *Public Defender Agency v. Superior Court,* 534 P.2d 947 (Alaska 1975); *Safer v. Superior Court of Ventura County,* 15 C.3d 230, 124 Cal. Rptr. 174, 540 P.2d 14 (1975); *State ex rel. Cook v. Superior Court of Allen County,* 247 Ind. 614, 220 N.E.2d 342 (1966); *Frankel v. Moskovitz,* 503 S.W.2d 428 (Mo. App. 1973); *Middleton v. Tozer,* 259 S.W.2d 80 (Mo. App. 1953).

Two cases have come to our attention that have dealt specifically with the involvement of a prosecuting attorney in a civil contempt case. In *Safer, supra,* the alleged contemners were charged with a misdemeanor for violating an injunction. The district attorney dropped the misdemeanor charge, and an order to show cause why the defendants should not be held in contempt was issued on

---

actions on his part would not alone justify treating a civil contempt as a criminal one. *See Faircloth v. Faircloth,* 339 So.2d 650 at 651 (Fla. 1976), where the Florida Supreme Court held that a finding of "ability to comply" could be based on a showing that the contemner "previously had the ability to comply but divested himself of that ability through his fault or neglect designed to frustrate the intent and purpose of the order" as well as by a showing of present ability.

the district attorney's application. At no time did the party which had obtained the injunction appear in the case, nor did they take any other action to seek enforcement of the injunction. The alleged contemners sought a writ of prohibition in the California Supreme Court. The district attorney argued that he should be allowed to proceed with the contempt action due to his general interest in the administration of justice and because any disobedience of a court order was an affront to the dignity of the court. The court rejected the district attorney's arguments and held: "Neither statute nor decision empowers a district attorney to intervene in a contempt proceeding stemming from private civil litigation in order to enforce an injunctive order granted at the behest of one of the litigants." 540 P.2d at 17.

In *Public Defenders Agency, supra,* an order to show cause was issued against a former husband who was in arrears in his support payments. The trial court ordered the public defender to defend the alleged contemner and also ordered the attorney general to prosecute the case. Both the public defender and the attorney general appealed the order. The Alaska Supreme Court found that the substantial state interest in enforcement of child support orders could justify the involvement of the attorney general in a contempt case of this nature, but that the courts were without power to order the attorney general to prosecute any particular contempt case. The basis of the holding was the prosecutorial discretion usually afforded to a state's prosecuting officials and the doctrine of separation of powers.[12] In the absence of an

---

[12] The Court said: "When an act is committed to executive discretion, the exercise of that discretion within the constitutional bounds is not subject to the control or review of the courts. To interfere with that discretion would be a violation of the doctrine of separation of powers." 534 P.2d at 950.

On a more practical level the Alaska Court also noted that "the Attorney General's office has neither the budget nor the manpower to effectively prosecute all of the support orders which are presently in arrears * * *. All we do today is to find that the Attorney General, if he so chooses, has the legal authority to carry out his duty to prosecute." 534 P.2d at 949-950, n.3.

election to prosecute by the prosecuting official the proper party to pursue the action is the private litigant.

We find the reasoning of those cases persuasive. There is a valid public interest in the enforcement of a noncustodial parent's duties of support. Absent legislation otherwise, however, such an interest does not create a positive duty on the part of a prosecuting attorney to prosecute a civil contempt action which arises from a failure to comply with a divorce decree which orders support payments. Indeed, involvement of the prosecutor in cases such as this may work an injustice to the alleged contemner.

The purpose of civil contempt is to benefit a private party. The court is, in effect, lending its authority to the private party to vindicate and assure the rights of the party. *See Court of Oyer & Terminer*, n.3, *supra*. The involvement of the prosecuting attorney in such a situation on the side of one of the parties would involve the government in a purely private dispute.[13] As noted in *Safer, supra*:

> The intervention of the district attorney in these proceedings, springing from a civil suit is, indeed, the introduction of the government itself on one side of the litigation, casting the whole issue into a different framework. The weight of government tends naturally to tilt the scales of justice in favor of the party whom the government sponsors.

540 P.2d at 19.

---

[13] The *West Virginia Constitution*, Article III, Section 20, provides: "Free government and the blessings of liberty can be preserved to any people only by a firm adherence to justice, moderation, temperance, frugality and virtue, and by a frequent recurrence to fundamental principles." A court's role in a civil contempt case is, initially, in its traditional fundamental capacity of an impartial arbiter in a private dispute. The court brings its usual objective, disinterested orientation to the case at this stage. It is only after a determination that only by intervention of the court on behalf of a party can that party's rights be secured that the court lends its authority in support of the party. The prosecutor, on the other hand, would be entering the case without even a pretense of objectivity. His intervention from the first would be on behalf of one private party and against another in what is essentially a purely private dispute.

Because there is no clear legal duty on the part of the Prosecuting Attorney of Mineral County to act in a civil contempt case brought by a party litigant to enforce a divorce decree, the writ of mandamus is denied.

*Writ denied.*