365 S.E.2d 353

**UNITED MINE WORKERS OF AMERICA, etc., et al.,**

v.

**Kenneth FAERBER, Commissioner, West Virginia Department of Energy, et al.**

**No. 17076.**

Supreme Court of Appeals of West Virginia.

Nov. 19, 1986.

McIntyre, Haviland and Jordan, Charleston, Michael Holland, General Counsel, UMWA, Washington, D.C., for United Mine Workers of America.

Jackson, Kelly, Holt & O'Farrell, John L. McClaugherty, Laura E. Beverage, Kay, Casto & Chaney, Richard D. Jones, Thomas V. Flaherty, Joseph M. Price, Timothy M. Miller, Edward N. Hall, Charleston, for Faerber, et al.

BROTHERTON, Justice:

This case is before us on a rule to show cause for contempt of this Court. The respondent is Kenneth Faerber, the Commissioner of the West Virginia Department of Energy.[1] The United Mine Workers of

---

1. Barton E. Lay, Jr., Director of the Division of Mines and Minerals, was also listed as a respon- dent. However, Mr. Lay was in an inferior position to Mr. Faerber and did not have au-

America charge that Faerber refused to obey an order of this Court directing him to enforce statutes requiring full roof bolting in all underground coal mine sections in this State using auger-type continuous coal mining equipment.

On July 10, 1986, this Court issued a writ of mandamus requiring all thin seam coal mines in this State which utilize auger-type continuous mining equipment to have a "full roof bolting" support plan. Because Mr. Faerber was in a supervisory position with respect to these mines, the mandamus order required him to oversee the conversion from the present roof bolting schemes to a full roof bolting scheme in each of the mines.

Depositions taken in this action showed that Mr. Faerber was clearly dissatisfied with the Court's opinion. He called the opinion an "ugly decision." A motion for rehearing was timely made and the same was denied on August 19, 1986. Meetings were then held to explore either an administrative or legislative option to defeat the Court's ruling. Although some meetings were held with the alleged purpose of implementing the new regulations, it was at best a marginal effort. Most of the meetings centered on complaints about the Court's new order and how it could be avoided. Little effort was made at fact finding during this period. Neither the owners of the affected mines nor the UMWA was contacted.

No real progress was made toward implementing regulations until October 23, 1986, the day this contempt action was filed. On that day a serious meeting was called, and shortly thereafter an acceptable set of regulations was drafted. The drafting could not have been difficult, as there was only one draft and the regulations were almost a carbon copy of the federal regulations. Little if any input in formulating the regulations was received or asked for by the respondents from their inspectors, the petitioners, miners, or coal operators.

## I.

There is a time to argue the case, a time to listen to the Court's decision, and then a time to obey the decision. When the original opinion was issued, this Court was not unanimous. While the dissenters have not changed their view on the underlying order, the Court now speaks with one voice in holding that the order must be promptly obeyed. Where this Court acts within its jurisdiction, its orders must be obeyed or contempt is a proper sanction. The respondent in this case did not want to obey the new law. While the respondent did not openly defy the Court, he did stall and delay the speedy implementation of the Court's order.[2] This case involved a safety issue of great importance. While this Court always requires that its orders be promptly obeyed, this is even more true when the issue concerns the health or safety of the citizens of West Virginia. We cannot condone the respondent Faerber's recalcitrance and, therefore, we find him guilty of contempt.

## II.

The next issue is what kind of contempt the respondent is guilty of, civil or criminal. "Whether a contempt is classified as civil or criminal does not depend upon the act constituting such contempt because such act may provide the basis for either a civil or criminal contempt action. Instead, whether a contempt is civil or criminal depends upon the purpose to be served by imposing a sanction for the contempt and such purpose also determines the type of sanction which is appropriate. Where the purpose to be served by imposing a sanction for contempt is to compel compliance with a court order by the con-

thority on his own to comply with the Court's order. Because of this, we decline to hold him in contempt, and focus our attention on Mr. Faerber.

**2.** It is not necessary that a party be resolved against ever obeying the Court's order to be found in contempt. A party who unnecessarily and purposefully "drags his feet" to stall the order may also be found in contempt. *See, e.g., Sanducco Corp. v. University Village East Condominium II,* 484 So.2d 640, 641 (Fla.Dist.Ct.App. 1986).

**76**

temner so as to benefit the party bringing the contempt action by enforcing, protecting, or assuring the right of that party under the order, the contempt is civil." Syl. pts. 1 and 2, *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 276 S.E.2d 812 (1981). In this case the contempt action was brought by the UMWA, a party to the original action, to enforce an order of the Court which benefited the UMWA. Therefore, this case squarely fits the test set out in *Michael* syllabus point 2 as one of civil contempt.

The Supreme Court of Appeals possesses the power to punish a party for contempt of an order of this Court. Syl. pt. 4, *State ex rel. Walker v. Giardina,* 170 W.Va. 483, 294 S.E.2d 900 (1982). We do not exercise this power in all cases. In a matter of indirect criminal contempt, the accused has a right to a jury trial where a determinate jail sentence is a possible penalty. *See* syl. pt. 2, *Hendershot v. Hendershot,* 164 W.Va. 190, 263 S.E.2d 90 (1980). This Court is not well adapted to jury trials. Therefore, matters of indirect criminal contempt are prosecuted through the local prosecuting attorney as a misdemeanor. *See State ex rel. Walker v. Giardina,* 170 W.Va. at 492, 294 S.E.2d at 909. Nevertheless, this is not a case of criminal contempt, but rather one of civil contempt. A jury trial is not required. *See State ex rel. Robinson v. Michael,* 166 W.Va. 660, 276 S.E.2d 812, 817–18 (1981). Superior courts have the inherent power to try and punish cases of civil contempt without a jury where their orders are violated. *See, e.g., State ex rel. Goldsmith v. Marion County,* 275 Ind. 545, 419 N.E.2d 109 (1981).[3] Therefore, this Court is competent to set the punishment for contempt in this case.

 "The appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term

and that also specifies a reasonable manner in which the contempt may be purged thereby securing the immediate release of the contemner, or an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the order." Syl. pt. 3, *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 276 S.E.2d 812 (1981). In this case there is no reason to apply a self purging penalty, because the respondent has already purged himself of the contempt by complying with the Court's order. The emergency regulations have been drafted and filed with this Court.[4]

This leaves the question of a monetary fine in the nature of compensation or damages to the UMWA because of the respondent's failure to comply with the order. In this case the UMWA suffered its costs and attorneys' fees in bringing this action, and suffered the inconvenience of making an appearance before this Court, but no other real detriment. We, therefore, hold that the respondent must pay the UMWA's costs and reasonable attorneys' fees in bringing this action in contempt,[5] and $100 compensatory damages.

### III.

There is one other issue before the Court—the length of time it will take to implement the regulations in the individual coal mines. Inspectors from the Department of Energy inspected each mine affected by this Court's order. If the mine did not meet the standards set out in the emergency regulations, the department issued a violation citation, with a deadline for correcting the violation, the longest time being until January 27, 1987. We can foresee the possibility that numerous extensions and delays could further stall efforts to implement the Court's order even beyond that

---

3. Of course, certain procedural safeguards must be present. The accused must have notice, the right to counsel, and the right to present evidence and argue his case. All of these were allowed the respondent in this case.

4. All parties acknowledge that the emergency regulations are adequate.

5. The award of attorneys' fees and costs is an appropriate sanction in a civil contempt case. *See, e.g., Major v. Orthopedic Equipment Co.,* 410 F.Supp. 1250, 1256 (E.D.Va.1976).

date. To insure the speedy implementation of the emergency regulations, we further order that all mines in this State covered by the July 10, 1986, order must submit a plan within ten days after this order is entered showing how they will implement the emergency regulations, and they must be in compliance with the emergency regulations on or before January 27, 1987. Failure to comply with the emergency regulations by that date shall cause immediate suspension of the permit to mine at such mine until the mine is in compliance with the regulations.

For the above reasons, we find the respondent in contempt, and grant the UMWA its costs, reasonable attorneys' fees in prosecuting this contempt motion, and $100 compensatory damages.[6]

Motion granted.

NEELY, Justice, dissenting in part:

I dissent only with regard to the imposition of a personal fine on the contemnor. This case concerns broad issues of social policy about which individuals of surpassingly good will passionately disagree. The Commissioner was executing the policy of the executive branch in attempting to avoid a potentially disasterous economic situation involving the loss of over 1000 jobs through every lawful means.

In the determination of issues of this sort there are accepted tolerances for inevitable friction among contending private factions and contending branches of government. Public officials are paid little enough without adding insult to injury by holding them personally liable for good faith exercises in judgment. The Commissioner pushed us and we resisted; further pushing would justify a personal fine. At this point, however, the Commissioner has not exceeded acceptable tolerances. Comity and civility among the branches of government therefore dictate to me that the fine is inappropriate.

Furthermore, although the majority opinion is unclear on this subject, it seems obvious to me that the imposition of attorneys' fees against the Commissioner is in his official, and not his personal capacity. It is only with that understanding that I concur in the award of attorneys' fees.

6. The Court also requested that the parties brief the question "May the Attorney General of West Virginia appoint a private attorney as a Special Assistant Attorney General to represent a public official upon a rule to show cause why that official should not be held in contempt of court?" Because the issue was not fully developed, we decline to address it in this proceeding.