352 S.E.2d 81

**Michael M. FLANIGAN**

v.

**WEST VIRGINIA PUBLIC EM-
PLOYEES' RETIREMENT
SYSTEM, etc., et al.**

**No. 16999.**

Supreme Court of Appeals of
West Virginia.

Dec. 12, 1986.

---

Larry Harless, Morgantown, for appellant.

Paul Richard Hull, Asst. Atty. Gen., Office of Atty. Gen., Charleston, for appellee.

McGRAW, Justice:

This case comes before us on a rule to show cause why the respondents should not be held in contempt of this Court. The respondents are the West Virginia Public Employees Retirement System (hereinafter "PERS"), its Board of Trustees[1] and its Executive Secretary, J.D. Hinkle, Jr. Willard M. Ansel, the Executive Secretary of the Teacher's Retirement Board, is also named as a respondent. The petitioner, Michael M. Flanigan, contends that the respondents have disobeyed an order of this Court directing them to enroll the petitioner in PERS. We agree, in part, and we order that the petitioner be enrolled.

The issue previously before this Court was whether the petitioner, a Mercer County magistrate, was eligible to participate in PERS and to have his more than 40 years of contributing service under the State Teachers Retirement System (hereinafter "TRS") credited to his PERS annuity. In 1977, when the petitioner first assumed the office of magistrate, he was advised by the State Court Administrator's Office (hereinafter "Administrator's Office") that he was ineligible to participate in PERS by virtue of his membership in TRS. In reliance on this advice, the petitioner made no attempt to participate in PERS and immediately began drawing retirement benefits from TRS.

In *Flanigan v. West Virginia Public Employees' Retirement System*, 176 W.Va. 330, 342 S.E.2d 414 (1986), we recognized that the advice of the Administrator's Office had been erroneous and that the petitioner had, in fact, been eligible to participate in PERS in 1977. To correct this error, we issued a writ of mandamus directing PERS to allow the petitioner to enroll in the system upon his election of one of the following options:

(a) paying into PERS (retroactively or prospectively) for three or more years and repaying (or suspending) his TRS annuity for the same period, thereby entitling him to three years PERS credit plus a full transfer of TRS credit; or (b) paying into PERS (retroactively or prospectively) for three or more years and transferring his military service credit from TRS, and continuing to draw an annuity from TRS. 176 W.Va. at 338, 342 S.E.2d at 422.

Our decision was rendered on March 25, 1986. On May 1, 1986, TRS terminated the petitioner's retirement benefits.

On or about May 14, 1986, the petitioner tendered to PERS a certified check for $3000 which he asserted represented his PERS employee contribution for the years 1983 to 1986. This payment was refused by Secretary Hinkle on the ground that the Administrator's Office had not yet submitted a membership enrollment showing that the petitioner was an employee of a participating employer. The Administrator's Office subsequently advised PERS that the petitioner was employed by a participating employer and resubmitted the certified check on his behalf. Secretary Hinkle again refused to accept payment, however, explaining in a letter dated May 28, 1986, that PERS had no record of the petitioner's prior service or of his employer's contribution for such service. Secretary Hinkle further stated that PERS would not credit the petitioner with prior service under TRS until all funds contributed to the latter system were legally transferred to PERS along with interest plus cost for funds expended.

By letter dated June 13, 1986, the petitioner's son, William Flanigan, notified the Administrator's Office that the petitioner had elected to pursue option (a) as set forth in the opinion of this Court and enclosed with his letter the petitioner's $3000 employee contribution. Mr. Flanigan also notified the Administrator's Office that the petitioner was prepared to repay to TRS the sum of $15,000 which, it is asserted, represented the amount of TRS benefits

**1.** The members of the PERS Board of Trustees are A. James Manchin, Glen B. Gainer, Jr., John McCuskey, Charles W. Fox and Elizabeth Poundstone.

paid to the petitioner from 1983 to 1986. By letter dated June 27, 1986, the Administrator's Office notified PERS of the petitioner's election of option (a) and forwarded to PERS the petitioner's employee contribution.

By letter dated July 1, 1986, Secretary Hinkle again informed the Administrator's Office that he could not accept the petitioner's contribution, this time on the ground that PERS could not grant a credit for the petitioner's prior service under TRS until the petitioner and his employer had made retroactive PERS contributions, with interest, for all nine years of the petitioner's magistrate service. On that same day, respondent Ansel notified the Administrator's Office that the Teacher's Retirement Board believed the petitioner's contributions to TRS and his years of service under that plan could not be transferred to PERS until the petitioner had reimbursed TRS for *all* retirement benefits paid between January 1, 1977 and May 1, 1986. On July 8, 1986, the petitioner instituted this contempt proceeding.

### I.

At the beginning of our analysis in *Flanigan, supra,* we stated that "if the petitioner wishes to receive service credit for *any or all* of his past service as a magistrate he must pay the statutorily required employee contributions due *for such periods.* (Emphasis added)" 176 W.Va. at 336, 342 S.E.2d at 420. Later, in discussing the petitioner's right to have PERS credit him for his years of contributing service under TRS, we stated:

> Of course, as is true for turning back the clock for past PERS service credit, the petitioner must repay all benefits received from the Teachers System *for the same years for which he establishes as PERS contributing service* in order to

transfer such credit. [Footnote omitted] In other words, the petitioner's TRS annuity must be suspended (i.e. repaid) *for those years of contributing PERS service he establishes* [Footnote omitted]. (Emphasis added) *Id.* 176 W.Va. at 336, 342 S.E.2d at 420–421.

It was on this basis that we formulated option (a), which permitted the petitioner to participate in PERS by "paying into PERS (retroactively or prospectively) *for three or more years* and repaying (or suspending) his TRS annuity *for the same period,* thereby entitling him to three years PERS credit plus a full transfer of TRS credit. (Emphasis added)" *Id.* 176 W.Va. at 338, 342 S.E.2d at 422.

There is no support in this language for the respondents' conclusion that, under option (a), the petitioner is required to make retroactive employee contributions, with interest, from January 1, 1977 and to repay all TRS retirement benefits he has received since that date. The clear import of our previous opinion is to allow the petitioner, if he elects option (a), to designate *any* number of his prior years of service as a magistrate as the years establishing his PERS contributing service. Pursuant to W.Va. Code § 5–10–14(b) (1986 Cum. Supp.),[2] the petitioner was required to have at least three years of contributing PERS service in order to have his prior contributing service under TRS credited to his PERS annuity. Thus, to avail himself of option (a), the petitioner could have designated from three to nine years of his prior magistrate service as PERS service.

The petitioner here chose to designate the minimum number of years which would entitle him to credit for his TRS service under W. Va. Code § 5–10–14(b) as his PERS contributing service. Accordingly, upon retroactive payment of his employee contributions from 1983 to 1986 and repayment of the TRS benefits he received

---

**2.** W.Va.Code § 5–10–14(b) provides:

> The board of trustees shall grant service credit to employees of boards of health, the Clerk of the House of Delegates and the Clerk of the state Senate, or *to any former and present member of the state teachers retirement system who have been contributing members for more than three years,* for service previously credited by the state teachers' retirement system, and shall require the transfer of the member's contributions to the retirement system, and shall also require a deposit, with interest, of any withdrawals of contributions any time prior to said member's retirement. Repayment of withdrawals shall be as directed by the board of trustees. (Emphasis added.)

during those three years, the petitioner was, under the mandate of *Flanigan,* clearly entitled to participate in PERS with full credit for his 41.25 years of prior contributing service under TRS.

The respondents argue that this result is unreasonable because the amount of the retirement benefits paid to the petitioner since January 1, 1977 far exceeds the amount of his TRS contributions and proposed benefit repayment. We addressed this issue in *Flanigan, supra,* where we recognized that option (a) was "entirely consistent" with W.Va.Code § 5–10–48 [1981].[3] That statute provided, in pertinent part:

> In the event a retirant becomes employed by a participating public employer, payment of his annuity shall be suspended during the period of his reemployment and he shall become a contributing member to the retirement system. If his reemployment is for a period of one year or longer, his annuity shall be recalculated and he shall be granted an increased annuity due to such additional employment....

Neither this statute nor the Teachers Retirement Act, W.Va.Code § 18–7A–1 *et seq.* (1984 Replacement Vol. & 1986 Cum.Supp.), makes any provision for repayment of retirement benefits paid to a retirant prior to his or her reemployment. If the petitioner had retired in 1977, but had not assumed the office of magistrate until 1983, he would not have been required, under the Code, to repay the TRS benefits he had received prior to 1983 as a prerequisite to his participation in PERS. By not claiming any contributing service under either TRS or PERS for the period from 1977 to 1983 and by foregoing any retirement credit for those years the petitioner has, in effect, placed himself in the same position.

Finally, the respondents contend that their failure to comply with these terms was due to their honest misapprehension of the law and not to any willful intention to disobey the Court. Indeed, they assert that they have not actually disobeyed our order but, rather, have undertaken good faith efforts to implement it, according to their interpretation.

As we have already noted, there is no ambiguity in our opinion which would justify the respondents' interpretation. Nor do we find no evidence of good faith efforts to implement our order. The respondents' arguments before this Court are only the latest in a series of excuses given to justify disobedience of our mandate. Indeed, at this stage of the proceedings, the respondents have raised, for the first time, the argument that the petitioner's check was not in the correct amount to cover his employee contribution for the past three years.[4] The only conclusion to be drawn is that the purpose of offering this never-ending parade of excuses was to avoid compliance with the holding of *Flanigan* for as long as possible.

■ In our recent decision in *United Mine Workers of America v. Faerber,* 179 W.Va. 73, 365 S.E.2d 353 (1986), we held, at Syllabus Point 1: "When this Court acts within its jurisdiction, its orders shall be promptly obeyed, or contempt is a proper

---

3. In 1986, the Legislature amended this provision. Effective July 1, 1986, W.Va.Code § 5–10–48 (1986 Cum.Supp.) provides, in pertinent part:

> (a) In the event a retirant becomes employed by a participating public employer, payment of his or her annuity shall be suspended during the period of his or her reemployment and he or she shall become a contributing member of the retirement system. If his or her reemployment is for a period of one year or longer, his or her annuity shall be recalculated and he or she shall be granted an increased annuity due to such additional employment....
> (b) In the event a retirant is elected to a public office or appointed to hold an elected

office, he or she has the option, notwithstanding subsection (a) of this section, to either:
> (1) Continue to receive payment of his or her annuity while holding such public office, in addition to the salary he or she may be entitled to as such officeholder; or
> (2) Suspend the payment of his or her annuity and become a contributing member of the retirement system as provided in subsection (a) of this section.

4. Since neither the petitioner nor the Administrator's Office appears ever to have been notified of the precise amount of their respective contributions, this is hardly an effective defense.

sanction." This rule is not limited to those who openly defy the authority of this Court, but is equally applicable to· one "who unnecessarily and purposefully 'drags his feet' to stall the order." *Id.*, slip op. at 3, n. 2.

 In view of the dissembling attitude displayed in this case towards enforcement of the petitioner's clear rights, we must conclude that the rejection of the petitioner's offer to make retroactive employee contributions and to repay TRS benefits he received during the last three years of his magistrate service and the concomitant refusal to accept him as a member of PERS with full credit for his prior service amounted to a contempt of this Court. The only questions left to be determined are which of the respondents are liable for the contempt and the sanction to be imposed.

### III.

 The facts, as presented by the parties, do not show any act on the part of respondent Ansel in disobedience of this Court's order. While it appears that respondent Ansel was responsible for stating a policy on behalf of TRS which could be construed as evidencing an intent not to obey the order, there is no showing that he has, as yet, had the opportunity to commit or refuse to perform any act not in accordance with the mandate of this Court. Intent to disobey a valid order is not, of itself, sufficient to constitute contempt, unless stated in court. *See generally* 17 C.J.S. *Contempt* § 8c (1963). Obstruction is the offense.

Moreover, the petitioner's right to credit for his years of prior service springs from this Court's order in *Flanigan* and not from any statutory or administrative requirement that TRS "transfer" credit to PERS. The onus is on the Board of Trustees to credit the petitioner for his prior TRS service. Of course, respondent Ansel has a fiduciary duty to accept the petitioner's adjusted repayment of the retirement

benefits he received from TRS from 1983 to 1986.[5]

 We do not think that individual members of the PERS Board of Trustees should be held in contempt on the facts as they appear in the record before this Court. There is no showing that the Board acted to oppose the implementation of this Court's order or that the Board members took steps individually to hinder or delay the petitioner's enrollment in PERS. Rather, it appears that the Board of Trustees relied upon the Executive Secretary to execute, that is, to put into effect the Court's mandate. It is, therefore, respondent Hinkle, the only respondent who has actually obstructed the petitioner's enrollment in PERS, who must be held to answer the charge of contempt.

### III.

 The Executive Secretary was not a party to the original action on this case. That fact does not preclude him from being held in contempt, however, for obstruction of the order entered therein. *See e.g., United States v. McAndrew,* 480 F.Supp. 1189 (E.D.Va.1979); *State ex rel. Walker v. Giardina,* 170 W.Va. 483, 294 S.E.2d 900 (1982); *Hendershot v. Handlan,* 162 W.Va. 175, 248 S.E.2d 273 (1978). Of course, one who is not a party to the order which is the subject of contempt charges must have actual knowledge of such order.

It is uncontested that Secretary Hinkle had actual knowledge of the order of this Court. In addition, the Executive Secretary is an integral cog in the administrative machinery of the State. He is the functionary charged with expediting the statutory procedure through which entitlees receive their due. *See* W.Va.Code § 5–10–9(b) (1979 Replacement Vol.).

 The instruction to be drawn from this discussion is that this Court is not required to issue writs *seriatim* to each link in the chain of administration. Every functionary of state government, whose action is essential to the execution of official process in the administration of justice, is

---

**5.** That duty is not the object of this contempt proceeding. However, failure to fulfill this fiduciary duty would subject the respondent to

liability separate and apart from this adjudication of contempt.

bound to respond to and implement orders of this Court of which he has knowledge, regardless of whether such functionary is personally named in the order. In circumstances such as these, the Executive Secretary is liable as an individual to punishment for contempt for disobedience of this Court's order.

### IV.

 The only question remaining is the sanction to be imposed. Since the purpose of this proceeding is to force the enrollment of the petitioner in PERS in accordance with the conditions set forth in *Flanigan*, the contempt is civil in nature. *In re Yoho*, 171 W.Va. 625, 301 S.E.2d 581 (1983); *State ex rel. Robinson v. Michael*, 166 W.Va. 660, 276 S.E.2d 812 (1981); *Floyd v. Watson*, 163 W.Va. 65, 254 S.E.2d 687 (1979); *Eastern Associated Coal Corp. v. Doe*, 159 W.Va. 200, 220 S.E.2d 672 (1975).

For the reasons stated herein, we find the Executive Secretary was in contempt of this Court. The petitioner seeks coercive sanctions to compel the respondents to honor his rights under *Flanigan*. However, in view of the stipulation that Secretary Hinkle died during the pendency of this proceeding, the contemnor is not subject to compulsion to perform any act.[6] We do, however, charge all appointees and employees of the Board of Trustees to prepare and process, post haste, ahead of all other work in the office, the documentation necessary to enroll the petitioner and, if necessary, to present the paperwork to the petitioner, at a place convenient to him, for such action as may be required of him. Respondents' counsel, as an officer of this Court, is herewith commissioned as a special receiver to superintend the winding up of the petitioner's proper enrollment. All of this is to be done within 15 days.

Contempt found. Relief ordered.

---

**6.** The fundamental purpose of sanctions is lost when they inure to the detriment of the beneficiaries of the contemnor's pension benefits, particularly the surviving spouse and surviving descendants in the first degree of relationship.