380 S.E.2d 43

**AMERICAN FEDERATION OF STATE, COUNTY and MUNICIPAL EMPLOYEES, et al.**

**v.**

**CIVIL SERVICE COMMISSION OF WEST VIRGINIA, et al.**

**No. 17929.**

Supreme Court of Appeals of West Virginia.

March 28, 1989.

James M. Haviland, Webster J. Arceneaux, III, McIntyre Haviland & Jordan, Charleston, for AFSCME.

Robert J. Lamont, Deputy Atty. Gen., Charleston, for CSC.

MILLER, Justice:

This is the fourth time that the American Federation of State, County, and Municipal Employees (AFSCME) has appeared before this Court in essentially the same case. AFSCME represents over one hundred state employees who seek back pay for work performed outside of their civil service classifications.[1] We concluded in *AFSCME v. Civil Serv. Comm'n*, 174 W.Va. 221, 324 S.E.2d 363 (1984) (*AFSCME I*), that work performed "out of classification" was compensable. In *AFSCME v. Civil Serv. Comm'n*, 176 W.Va. 73, 341 S.E.2d 693 (1985) (*AFSCME II*), we settled the back pay question. In a per curiam order (*AFSCME III*) dated May 20, 1988, we directed the Civil Service Commission (CSC) to submit a plan for implementing our prior decisions. AFSCME now challenges the sufficiency of that plan by way of a motion for contempt, contending there has been a contumacious failure to comply.

Three basic questions are presented: (1) whether the plan for back pay determinations submitted by the CSC is consistent with our directives of May 20, 1988, (2) whether the CSC is guilty of contumacious conduct, and (3) whether the jurisdiction of the CSC in "out of classification" cases is superseded by the new state employee grievance procedure contained in W.Va. Code, 29–6A–1, *et seq.* (1988).

I.

These cases are traceable to the early 1980s, when certain state employees

---

1. In addition to the parties hereto, AFSCME represents other employees who filed back pay claims subsequent to our decision in *AFSCME v. Civil Serv. Comm'n,* 174 W.Va. 221, 324 S.E.2d 363 (1984) (*AFSCME I*). These cases have not been finally determined.

claimed they were required to work out of classification. Most of these employees worked in the Department of Human Services (DHS) and were classified as Economic Service Workers. They claimed that they performed duties associated with a higher classification level.[2] In grievances filed with DHS, these employees asserted that they were entitled to be reclassified at the higher level and to receive back pay commensurate with that level.

On July 1, 1984, the CSC approved a new classification plan for all DHS employees, and most of the grievants received promotions. Ultimately, the CSC concluded that the grievants had performed work "out of classification" prior to their promotions, but denied their claims for back pay. Applying the principle of "equal pay for equal work," as set forth W.Va.Code, 29-6-10(2),[3] we held on appeal that the employees were entitled to the difference in compensation between the higher and lower classification levels. *AFSCME I*, 174 W.Va. at 225, 324 S.E.2d at 367. We remanded the case to allow the CSC to make individual determinations of back pay.

In reliance on W.Va.Code, 29-6-15,[4] which requires most grievances to be filed within thirty days, the CSC limited back pay to the equivalent of thirty days pay. The employees immediately petitioned this Court for a writ of mandamus to require full back pay. We concluded that the filing

requirements of W.Va.Code, 29-6-15, were inapplicable to "out of classification" cases, and that the employees were entitled to back pay "for the entire period during which they worked out of classification." *AFSCME II*, 176 W.Va. at 79, 341 S.E.2d at 698-99.

The CSC failed to make timely back pay determinations as required, and the employees again petitioned for relief in mandamus. We issued a supplemental writ by per curiam order in *AFSCME III*. This writ directed the CSC to fully implement, within thirty days, a grievance procedure to resolve "out of classification" disputes.[5] In addition, the CSC was to submit, within sixty days, a plan setting forth how and when it would comply with *AFSCME I* and *AFSCME II*.

On July 20, 1988, in an attempt to comply with our supplemental writ, the CSC amended its administrative rules [6] applicable to misclassification cases.[7] Under the procedures now in effect, the CSC must determine at the threshold whether an employee is, in fact, misclassified. If the employee successfully proves misclassification, he is entitled to back pay. Claims for back pay are to be processed in accordance with a "Back Wage Computation Policy," submitted by the CSC on the same day.

Under this back pay policy, employees are required to formally request back pay within fifteen days of the determination that they worked "out of classification." [8]

2. Specifically, the employees were classified as Economic Service Workers I and II. These employees were required to perform essentially the same duties as an Economic Service Worker III.

3. As relevant here, W.Va.Code, 29-6-10(2), reads: "The principle of equal pay for equal work in the several agencies of the state government shall be followed in the pay plan as established hereby."

4. W.Va.Code, 29-6-15, reads, in part: "Any employee in the classified service who is dismissed or demoted after completing his probationary period of service or who is suspended for more than thirty days in any one year, may, *within thirty days after such dismissal, demotion or suspension,* appeal to the [civil service] commission for review thereof." (Emphasis added).

5. Prior to *AFSCME I*, the CSC took the position that "out of classification" disputes were not

grievable. Under a settlement approved by the parties on September 28, 1984, the CSC was to provide a four-step procedure for the resolution of such disputes. Since the CSC did not implement the final step, which provided for CSC review, the mandamus was issued to require full implementation of the procedure.

6. These amendments, issued as emergency rules pursuant to W.Va.Code, 29A-3-15, were codified at CSR § 143-1-5.04.

7. We wish to stress that "out of classification" and "misclassification" are used synonymously.

8. The fifteen-day filing requirement is applicable only to future cases. As will be discussed in Part II-A, *infra*, other filing requirements were established for pending cases.

The back pay request must include the date of onset of the misclassification. A response by the employer is to be provided within fifteen days. If the onset date is undisputed, the claim is forwarded to the CSC for audit and payment. If the employer contests the onset date, the employee is required to file a grievance pursuant to W.Va.Code, 29–6A–1, *et seq.*, to resolve the back pay dispute. The outcome of the grievance is subject to CSC review.

AFSCME filed this motion for contempt on October 27, 1988, to challenge the sufficiency of the back pay policy. Rules to show cause were issued against the CSC and the various state employers on November 1, 1988, and made returnable on December 6, 1988.

## II.

AFSCME contends in its contempt motion that the back pay policy is unfaithful to the directives set out in our order of May 20, 1988. The policy is objected to for two reasons. First, AFSCME states that it improperly seeks to establish retroactive filing requirements for certain back pay claims. AFSCME also claims that the procedure outlined in the policy is unnecessarily protracted and cumbersome. We shall consider these objections in sequence.[9]

## A.

■ Two classes of employees who are subject to the back pay policy have already received promotions for work performed "out of classification." These classes include: (1) all employees of DHS who were reclassified on July 1, 1984; and (2) all other employees who were reclassified under the CSC administrative grievance procedure. For each of these classes, the July 20, 1988, back pay policy imposes retroactive filing deadlines for back pay claims. For DHS employees who were reclassified

on July 1, 1984, claims for back pay were required to be filed on or before July 1, 1985. Other back pay claims subject to the policy were to be filed within six months of the date of promotion.

AFSCME asserts that the deadlines violate our prior *AFSCME* cases. We rejected in *AFSCME II* attempts by the CSC to limit artificially the recovery of back pay by employees who worked "out of classification." There, we announced the rule that all such employees were "entitled to the salary differential ... *for the entire period during which they worked out of classification.*" 176 W.Va. at 80, 341 S.E.2d at 699. (Emphasis added).

We repeated this concern in *AFSCME III* and stressed that full back pay was recoverable not only for future, but also for past misclassifications.

"[T]he CSC has a mandatory duty to enforce promptly and effectively the 'equal pay for equal work' principle by operating the Grievance and Classification Review Procedure so that *all employees are properly classified and receive 'full' back pay or retroactive pay for the period in which they were misclassified.*" (Emphasis added). 176 W.Va. at 80, 341 S.E.2d at 699.

To the extent that the CSC back pay policy promulgated on July 20, 1988, imposes retroactive deadlines, and thereby deprives otherwise qualified employees of full back pay, it is in direct conflict with *AFSCME II* and *AFSCME III* and is void. The principle that runs throughout our *AFSCME* cases is that employees are entitled to back pay for all periods they were required to work outside of their civil service classifications. The CSC may not by its rules or procedures frustrate this principle of full back pay for those who are entitled to such pay.[10]

---

**9.** We note, too, that in its response to the contempt motion, the CSC states that the back pay policy is inapplicable to those employees who are parties to this litigation. This omission is not specifically raised by AFSCME as a basis for contempt, but is referred to in the briefs. Clearly, these employees were intended to be the primary beneficiaries of our May 20, 1988 directives. We, therefore, conclude that the policy is deficient insofar as it excludes them.

**10.** We are not informed of the specific facts of these cases. The CSC claims that there was sufficient notice of the rights of misclassified employees that anyone affected should have known to file a grievance prior to *AFSCME I.*

### B.

■ AFSCME's second objection to the back pay policy is that its procedures are protracted and cumbersome. What the CSC has done, in effect, is to divide "out of classification" cases into two distinct phases. In the first phase, the sole issue is whether the employee performed work out of his classification. This is determined pursuant to the procedures authorized by the CSC administrative rules summarized above. It consists of four procedural levels and requires approximately 165 days to complete, exclusive of judicial review.

The second phase is de novo in nature. It involves the calculation of the amount of back pay due to the employee, made in accordance with the procedures contained in the back pay policy. This phase can involve as many as three forums—the employer, the Education and State Employees Grievance Board, and the CSC. The time necessary to complete the second phase is approximately 150 days, exclusive of judicial review.

We find this bifurcated procedure to be wholly unacceptable. The purpose of our May 20, 1988 order was to expedite the resolution of these and other back pay claims. The CSC's back pay policy serves only to prolong them. It does so in two ways. First, it assures that every "out of classification" case will be split procedurally into two phases. Given the interconnectedness of the issues involved, this is both unwise and unwarranted. Second, the time frame for decision is unduly long. If judicial review were pursued at the conclusion of each of the two phases, it is entirely possible for even the simplest case to remain in litigation for two years or more. We thus find that the back pay policy is also deficient from a procedural standpoint.

### C.

■ Having concluded that the back pay policy is in contempt of our May 20, 1988 order in two respects, it remains to inquire

what punishment is appropriate. We, of course, possess the inherent power to punish a party for contempt of our lawful orders. This power is largely discretionary, and relief may be tailored so as to ensure full compliance therewith. *Flanigan v. Public Employees Retirement Sys.*, 177 W.Va. 331, 352 S.E.2d 81 (1986); *UMWA v. Faerber*, 179 W.Va. 73, 365 S.E.2d 353 (1986); *State ex rel. Walker v. Giardina*, 170 W.Va. 483, 294 S.E.2d 900 (1982).

Unquestionably, the CSC has been less than enthusiastic in its implementation of our *AFSCME* cases. Even so, we cannot say that it wilfully or contumaciously disobeyed our directives. More importantly, the prime object of AFSCME's contempt motion was to compel the CSC to fully comply with our May 20, 1988 order. Since we conclude in Part III, *infra*, that the jurisdiction of the CSC in "out of classification" cases is preempted by W.Va.Code, 29–6A–1, *et seq.*, further sanctions are unnecessary. We do find it appropriate, under the circumstances of the case, to require the CSC to pay the reasonable attorney's fees and costs incurred by AFSCME in the prosecution of this motion. *See UMWA v. Faerber*, 179 W.Va. at 76, 365 S.E.2d at 356. This is a form of relief that exists under the civil service statute. W.Va.Code, 29–6–15; *Barnes v. Public Serv. Comm'n*, 172 W.Va. 232, 304 S.E.2d 685 (1983).

It is also within the scope of our contempt power to order that an "improper act, which has been done in disobedience of [our] lawful process or orders, ... be undone" by the contemnor. *State ex rel. Mason v. Harper's Ferry Bridge Co.*, 16 W.Va. 864, 888 (1879). Since we find the CSC policy to be substantially at variance with our order of May 20, 1988, and our prior *AFSCME* cases, we are constrained to render that policy ineffective. We, therefore, declare the CSC back pay policy

As to those employees who have filed no grievance, we note that the doctrine of laches may, in appropriate cases, raise a bar to relief. It is well-settled that, in the absence of a statute of limitations, laches will be applied in administrative cases. *See Harris v. Civil Serv. Comm'n*, 154 W.Va. 705, 178 S.E.2d 842 (1971); *see generally* 2 Am.Jur.2d *Administrative Law* § 321 (1962).

to be null and void, and direct the CSC forthwith to withdraw the same.[11]

### III.

 Finally, AFSCME asks us to hold that the jurisdiction of the CSC in "out of classification" cases is superseded by W.Va.Code, 29–6A–1, *et seq.* This statute, passed by the Legislature in its 1988 Regular Session,[12] provides a new grievance mechanism for civil service employees. AFSCME contends that the statute ousts the jurisdiction of the CSC in all "out of classification" cases. In response, the CSC asserts that it retains exclusive jurisdiction over all matters of classification.

We must first review the relevant statutes. We have commented in our cases that the purpose of the civil service statute is to provide security of tenure to state employees. *E.g., Blake v. Civil Serv. Comm'n,* 172 W.Va. 711, 310 S.E.2d 472 (1983); *Baker v. Civil Serv. Comm'n,* 161 W.Va. 666, 245 S.E.2d 908 (1978). This is accomplished, in part, by "the establishment of a system of personnel administra-

tion based on ... scientific methods" of classification. W.Va.Code, 29–6–1. To this end, W.Va.Code, 29–6–10(1), confers on the CSC jurisdiction to adopt administrative rules for classification plans.

Until 1988, in conjunction with its rule making, the CSC also administered grievance procedures for civil service employees. These procedures were expressly abolished by the new grievance statute, W.Va.Code, 29–6A–1, *et seq.*[13] Very broadly, the purpose of the new statute is to "provide ... for the equitable and consistent resolution of employment grievances." W.Va.Code, 29–6A–1. It authorizes the Education and State Employees Grievance Board[14] to hear and decide a wide variety of employment grievances, including violations by employers of the civil service statute or rules.[15]

 We find the civil service and grievance statutes to be harmonious. It was clearly the intention of the Legislature to vest exclusively in the CSC the responsibility to classify state employees and to ensure pay equity within the same class. W.Va.Code, 29–6–10(1).[16] Significantly, the

11. We decline to find the various state employers in contempt. While our May 20, 1988 order required employers to resolve back pay disputes promptly, the CSC was to provide a timetable and appropriate procedures. This it did not do. Furthermore, the record evidences bona fide efforts by these employers to resolve the disputes. We, therefore, dismiss the rules to show cause heretofore issued against them.

12. 1988 W.Va.Acts ch. 62 (passed March 12, 1988; effective July 1, 1988).

13. Specifically, W.Va.Code, 29–6A–11, provides that "[t]his article supersedes and replaces the civil service grievance and appeals procedure currently authorized under the rules and regulations of the [CSC]...."

14. The Education and State Employees Grievance Board, W.Va.Code, 29–6A–2(a), was formerly the Education Employees Grievance Board, as established in W.Va.Code, 18–29–5. In effect, the new grievance statute gave to public employees a grievance mechanism similar to what had been provided to teachers under W.Va.Code, 18–29–1, *et seq.*

15. W.Va.Code, 29–6A–2(i), defines those grievances that are cognizable under the statute:

"'Grievance' means any claim by one or more affected state employees alleging a vio-

lation, a misapplication or a *misinterpretation of the statutes, policies, rules, regulations or written agreements under which such employees work, including any violation, misapplication or misinterpretation regarding compensation, hours, terms and conditions of employment,* employment status or discrimination; any discriminatory or otherwise aggrieved application of unwritten policies or practices of their employer; any specifically identified incident of harassment or favoritism; or any action, policy or practice constituting a substantial detriment to or interference with effective job performance or the health and safety of the employees.

"Any pension matter or other issue relating to public employees insurance in accordance with article sixteen [§ 5–16–1 et seq.], chapter five of this code, retirement, or any other matter in which authority to act is not vested with the employer shall not be the subject of any grievance filed in accordance with the provisions of this article." (Emphasis added).

16. W.Va.Code, 29–6–10(1), authorizes the CSC to promulgate or amend rules:

"For the preparation, maintenance and revision of a position classification plan for all positions in the classified service and a position classification plan for all positions in the classified-exempt service, based upon similarity of duties performed and responsibilities

civil service statute provides that once the classification plan is approved by the CSC, it is the director who implements the plan. If an employee affected by the classification plan objects to his or her assignment, a request for reconsideration may be made to the director. The statute also provides that the employee shall "be given a reasonable opportunity to be heard thereon by the director." [17] It does not provide for a hearing with the CSC. There is nothing in the statute that empowers the CSC to hear and decide objections that relate to the classification plan.

As we have earlier noted, as a result of the adoption in 1988 of W.Va.Code 29–6A–1, *et seq.*, it is clear that the Legislature intended to place in the Education and State Employees Grievance Board jurisdiction over matters arising from a "misapplication or misinterpretation regarding ... hours, terms and conditions of employment." [18] This terminology is sufficiently broad to cover a grievance for work performed out of classification. Furthermore, W.Va.Code, 29–6A–11, provides that "[t]his article supersedes and replaces the civil service grievance and appeal procedure currently authorized under the rules and regulations of the [CSC]." The clarity of

these provisions compels the conclusion that the CSC has no jurisdiction to handle misclassification grievances.

We, therefore, hold that where a civil service employee is required by his employer to perform duties that are outside of his civil service classification such employee, if he wishes to file a grievance, must do so pursuant to W.Va.Code, 29–6A–1, *et seq.* The jurisdiction of the CSC to hear and decide such grievances is abolished.[19]

We deem it necessary to establish some specialized procedures for those cases that arose prior to July 1, 1988, the effective date of the new grievance statute.[20] Our review of the record reveals that the parties hereto have already been determined to have worked out of classification. Their cases, therefore, involve only the issue of back pay. AFSCME requests that these back pay claims be resolved pursuant to the expedited grievance procedure provided for in W.Va.Code, 29–6A–4(e).[21]

We find that because of the simplicity of the issue presented, and the considerable delay attendant to these claims, the expedited procedure of W.Va.Code, 29–6A–4(e), is preferable. We, therefore, direct that the claims of all employees who are parties hereto, not previously settled or dis-

assumed, so that the same qualifications may reasonably be required for and the same schedule of pay may be equitably applied to all positions in the same class."

**17.** W.Va.Code, 29–6–10(1), further provides:

"After each such classification plan has been approved by the [civil service] commission, the director shall allocate the position of every employee in the classified service to one of the classes in the classified plan and the position of every employee in the classified-exempt service to one of the positions in the classified-exempt plan. Any employee affected by the allocation of a position to a class shall, after filing with the director of personnel a written request for reconsideration thereof in such manner and form as the director may be prescribe, be given a reasonable opportunity to be heard thereon by the director. The interested appointing authority shall be given like opportunity to be heard."

**18.** For the full text of W.Va.Code, 29–6A–2(i), see note 15, *supra*.

**19.** We do note that W.Va.Code, 29–6A–4, allows the director of the CSC to participate at the third and fourth levels of the new grievance procedure.

**20.** It is not contended that W.Va.Code, 29–6A–11, which makes the statute applicable "to all grievances arising on or after the effective date of this article [July 1, 1988]," renders it prospective only. Assuming *arguendo* that the statute was intended to operate prospectively, we note that the CSC directly incorporated the statute's grievance procedure into its back pay policy. It is, therefore, estopped to deny the applicability of that procedure in these cases.

**21.** W.Va.Code, 29–6A–4(e), provides:
"An employee may grieve a final action of the employer involving a dismissal, demotion or suspension exceeding twenty days directly to the hearing examiner. The expedited grievance shall be in writing and must be filed within ten days of the date of the final action with the chief administrator and the director of personnel of the state civil service commission."

missed,[22] be transferred forthwith to the Education and State Employees Grievance Board for resolution pursuant to the expedited grievance procedure.

All other such grievances that arose prior to July 1, 1988, must be resolved in accordance with the grievance procedures of W.Va.Code, 29–6A–1, *et seq.* We are advised that the identity of some employees who have worked out of classification is as yet unknown. To allow equal opportunity for all affected employees to file grievances, consistently with our prior *AFSCME* cases, we will allow the grievances to be filed within ninety days of this opinion.

## IV.

To summarize:

(1) The CSC is adjudged guilty of contempt, and is directed to reimburse AFSCME for its reasonable attorney's fees and costs incurred in the prosecution of this contempt motion.

(2) The "Back Wage Computation Policy" submitted by the CSC on July 20, 1988, is declared to be null and void, and the CSC is directed forthwith to withdraw the same. Back pay is to be awarded according to the mandates of this opinion.

---

**22.** We approve of all settlements previously entered into by AFSCME and state employers as

(3) Misclassification disputes by civil service employees are grievable exclusively under W.Va.Code, 29–6A–1, *et seq.*

(A) With respect to the claims of the parties hereto, such claims shall be transferred forthwith to the Education and State Employees Grievance Board for resolution pursuant to the expedited grievance procedure in W.Va.Code, 29–6A–4(e).

(B) With respect to all other claims arising prior to July 1, 1988, the employees are directed to file, within ninety days hereof, a grievance pursuant to W.Va.Code, 29–6A–1.

Contempt found, relief ordered.

NEELY, J., dissents for the reasons stated in his dissenting opinion in *AFSCME v. Civil Service Comm'n*, 176 W.Va. at 80, 341 S.E.2d at 699.

McGRAW, J., participated and concurred in this decision, but departed from the Court prior to the preparation of the opinion. WORKMAN, J., did not participate in the consideration or decision of this case.